FILED
COURT OF APPEALS
DIVISION II

2014 JUL -8 AM 10: 08

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>JUAN JOSE GOMEZ VASQUEZ,<br><br>               Appellant. | No. 43422-9-II |
| In re Personal Restraint of<br><br>JUAN JOSE GOMEZ VASQUEZ,<br><br>               Petitioner. | UNPUBLISHED OPINION<br><br>Consolidated with Nos. 44485-2-II,<br>44616-2-II, 44607-3-II |

JOHANSON, C.J. — A jury found Juan Jose Gomez Vasquez guilty of unlawful delivery of a controlled substance contrary to RCW 69.50.401(2)(b). Gomez Vasquez appeals his conviction, contending that (1) he received ineffective assistance of counsel, (2) the State committed prosecutorial misconduct, and (3) that the trial court erroneously denied Gomez Vasquez's right to self-representation. Gomez Vasquez also filed two statements of additional grounds (SAG) and three personal restraint petitions (PRP) which are consolidated with this

appeal.[1] We hold that (1) Gomez Vasquez's ineffective assistance of counsel claims fail because he is unable to demonstrate resulting prejudice, (2) the prosecutor's misconduct was not flagrant and ill intentioned and incurable by instruction, (3) that Gomez Vasquez waived his right to self-representation by proceeding through trial with counsel, and (4) that Gomez Vasquez's SAG arguments fail. We also deny Gomez Vasquez's PRPs. Accordingly, we affirm his conviction.

## FACTS

### I. BACKGROUND

Kevin Gordon used drugs for over 25 years. In June 2011, police pulled Gordon over and found an ounce of methamphetamine in Gordon's possession. Officer Don Walkinshaw arrived at the scene and inquired as to Gordon's willingness to work for the police. Aware that he was facing up to 20 years in prison if convicted on his charges, Gordon agreed to plead guilty when offered a more lenient sentence in exchange for his work as a confidential informant (CI). Shortly thereafter, Gordon began to conduct "reliability buys" for Officer Walkinshaw. 2 Report of Proceedings (RP) at 197.

In August 2011, Officer Walkinshaw put Gordon in contact with Officer James Buchanan. On August 18, Gordon went to the police station and, in the presence of Officer Buchanan, called and spoke to Gomez Vasquez reaching an agreement to exchange cash for drugs at a location in Pierce County. Before taking Gordon to the meeting location, Officer Buchanan conducted a standard prebuy search which required Gordon to empty his pockets and submit to a thorough search, frisk, and pat down of his person. Officer Buchanan provided Gordon with a scale and prerecorded money to purchase a quarter ounce of methamphetamine.

---

[1] The Stated filed a motion to strike the exhibits attached to Gomez Vasquez's PRPs. A commissioner of our court denied that motion.

Gordon went to the location where he and Gomez Vasquez agreed to meet while Officer Buchanan and other members of his investigation team conducted surveillance. But because the technology unit was unavailable, Officer Buchanan was unable to record audio or video of the day's events. Gordon arrived at the location and entered a van in which Gomez Vasquez was a passenger. Gordon gave Gomez Vasquez the money and Gomez Vazquez left on a bicycle returning a few minutes later with a package that needed to be "weigh[ed] out," but Gordon discovered that the scale he had been given was not functioning, so he was taken to Gomez Vasquez's residence to complete the transaction. Members of Officer Buchanan's surveillance team followed the van from the original location back to Gomez Vasquez's home as Gordon relayed the changing plans to Officer Buchanan via text message. Gordon arrived at Gomez Vasquez's residence where Gordon was given a quarter ounce of methamphetamine. After the transaction, Officer Buchanan retrieved Gordon who produced a baggie of what was later confirmed to be methamphetamine. Officer Buchanan again searched Gordon. On August 30, Officer Buchanan applied for a search warrant.

On September 7, Officer Buchanan and several other members of the Tacoma Police Department executed the search warrant at the residence where Gordon purchased the methamphetamine. During the ensuing search, police recovered marijuana, prescription pills, a gun, a scale, and documents with Gomez Vasquez's name on them. But the officers did not find methamphetamine or any of the marked money Gordon used to buy the drugs. During the search, Officer Kenneth Smith read Gomez Vasquez Miranda[2] warnings. Afterwards, Gomez Vasquez agreed to speak to Officer Buchanan. Gomez Vasquez initially claimed that he only

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

consumed drugs, but when he was advised that police had observed the earlier controlled buy, Gomez Vasquez admitted to selling methamphetamine and heroin.

## II. PROCEDURE

The State initially charged Gomez Vasquez with two counts of unlawful delivery of a controlled substance, second degree unlawful possession of a firearm, two counts of possession of a legend drug, and unlawful possession of a controlled substance. But the State amended the charges to one count of unlawful delivery of a controlled substance.

### A. PRETRIAL MOTIONS

Either by agreement of both parties or for administrative necessity, Gomez Vazquez's trial date was continued a total of five times. Although his counsel agreed to continue the case, Gomez Vasquez himself objected to any continuance during his omnibus hearing, desiring that the record reflect the assertion of his speedy trial rights. Gomez Vasquez refused to sign each subsequent order continuing the trial date.

Gomez Vasquez also moved to suppress the admissions he made during the execution of the search warrant on grounds that he did not knowingly and voluntarily waive his right to remain silent. Notwithstanding some evidence that Gomez Vasquez appeared tired or possibly high on drugs, the trial court ruled that the statements were made after Gomez Vasquez voluntarily waived his *Miranda* rights. Additionally, Gomez Vasquez filed a motion in which he claimed to waive his right to counsel and contended that he wished to represent himself pro se. But Gomez Vasquez was represented by counsel throughout trial and did not bring this motion to the trial court's attention until the day he was scheduled to be sentenced.

## B. TRIAL TESTIMONY AND POST-TRIAL PROCEEDINGS

At trial, Officer Buchanan testified on behalf of the State. On redirect examination, the prosecutor asked Officer Buchanan to describe the items found in the house and elicited the following testimony:

> [THE STATE:] So [defense counsel] was asking you about some of the things
>      you found in the house. Did you find a scale in the house?
> [OFFICER BUCHANAN:] Yes.
> [THE STATE:] Did you find a gun in the house?
> [OFFICER BUCHANAN:] Yes.
> [THE STATE:] Did you find bullets in the house?
> [OFFICER BUCHANAN:] Yes.

2 RP at 208. Then, in closing argument, the State utilized a "peg theory," arguing that the various little "pegs" supported Gordon's version of the events and showed Gomez Vasquez's guilt. Responding to testimony that no methamphetamine was found during the search of Gomez Vasquez's residence, the prosecutor stated,

> Ask yourselves, think about this, why did Mr. Gordon tell you that they went to this house? What did they need? You remember. He said, a scale, right? What did Officer Buchanan tell you that he found in that house? A scale. I'm going to hang up another little peg for Mr. Gordon, right. Everything keeps supporting what he told you. You didn't find any methamphetamine, no, but I found some other drugs. You didn't find any methamphetamine, but I found a loaded handgun.

3 RP at 304. Gomez Vasquez did not object to Officer Buchanan's testimony on redirect nor did he object to the prosecutor's closing argument. The jury found Gomez Vasquez guilty as charged.

At sentencing, Gomez Vasquez complained that the court failed to address the various pro se motions that he had submitted before and after trial, including a motion for arrest of judgment and new trial. The trial court denied his motion for a new trial the following week.

5

Gomez Vasquez appeals his conviction for unlawful delivery of a controlled substance and his sentence of 75 months confinement. Gomez Vasquez also filed three PRPs which are consolidated by order to his direct appeal.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Gomez Vasquez argues that his trial counsel rendered ineffective assistance by failing to move to exclude prejudicial gun evidence and by failing to object or request a sidebar once the testimony involving the weapon was adduced. Because Gomez Vasquez fails to show resulting prejudice, his ineffective assistance of counsel argument fails.

### A. RULES OF LAW

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). An appellate court reviews an ineffective assistance claim de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable and giving exceptional deference when evaluating counsel's strategic decisions. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Thus, to establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *McNeal*, 145 Wn.2d at 362. To establish prejudice, a defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

## B. Counsel's Failure to Object

Here, counsel for Gomez Vasquez did not object to Officer Buchanan's testimony regarding the gun found during the search nor did counsel object to the prosecutor's gun remarks during closing argument. Because the unlawful firearm possession charge was dismissed before trial, evidence relating to the gun was no longer relevant to Gomez Vasquez's case and the trial court likely would have sustained an objection under ER 402.[3]

Even assuming such an objection would have been sustained, Gomez Vasquez cannot show that the result of the trial would have been different absent the gun evidence. There were only two fleeting references to the gun throughout the trial. In addition, the State's evidence against Gomez Vasquez on the unlawful delivery charge was decidedly strong. Tacoma police identified Gomez Vasquez as a participant in a controlled drug buy. Gordon was searched before he met with Gomez Vasquez and Gordon produced a quantity of methamphetamine upon his departure from Gomez Vasquez's residence. Gordon testified that he bought methamphetamine from Gomez Vasquez. When questioned by Officer Buchanan, Gomez Vasquez admitted dealing methamphetamine and heroin.

Consequently, Gomez Vasquez does not demonstrate that his trial counsel rendered ineffective assistance by failing to object to the admission of the gun evidence because there is no reasonable probability that, but for counsel's deficient performance, the outcome of the case would have been different. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

---

[3] Under ER 402, relevant evidence is generally admissible and "[e]vidence which is not relevant is not admissible." Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Evidence of the gun seizure does not make the existence of any fact of consequence to the determination of the unlawful delivery charge more or less probable.

7

## C. FAILURE TO EXCLUDE GUN EVIDENCE

In the alternative, Gomez Vasquez argues that his trial counsel was ineffective in failing to move in limine to exclude the gun evidence. Counsel's failure to make a motion does not support an ineffective assistance of counsel claim unless Gomez Vasquez can show that the motion would have been properly granted. *State v. Price*, 127 Wn. App. 193, 203, 110 P.3d 1171 (2005), *aff'd*, 158 Wn.2d 630, 146 P.3d 1183 (2006). Gomez Vasquez must make this showing based on the record developed in the trial court. *McFarland*, 127 Wn.2d at 337.

After the State amended the information leaving only the unlawful delivery charge, the gun evidence was rendered entirely irrelevant because it had no tendency to make any element of the remaining charge more or less probable. ER 401. Although the amended information was filed on the day trial began, counsel for Gomez Vasquez said that he had an opportunity to review and discuss the amendments a week before the trial. Therefore, counsel knew that evidence of the weapon was no longer relevant and could be prejudicial, but he opted not to attempt to exclude this evidence in his trial memorandum. The trial court likely would have granted a motion to exclude the gun evidence on grounds that it was irrelevant and overly prejudicial.[4]

Accordingly, we find that defense counsel's performance fell below an objective standard of reasonableness. *McNeal*, 145 Wn.2d at 362. But notwithstanding his ability to satisfy the deficient performance prong, Gomez Vazquez's ineffective assistance claim fails because he

---

[4] The State urges us to conclude that counsel's decision not to bring a motion was tactical because it was consistent with the defense's theory that the evidence found belonged to other residents of the home. There was evidence found, including documents bearing names other than Gomez Vasquez, which already demonstrated the fact that the residence was shared. Contrary to the State's position, there appears to be no legitimate trial tactic associated with this failure.

8

cannot show that the outcome of the trial would have been different but for his counsel's deficient performance. *McFarland*, 127 Wn.2d at 335.

Evidence of a connection between a criminal defendant and a firearm can be highly prejudicial when such a connection is unassociated with the underlying crime. *State v. Rupe*, 101 Wn.2d 664, 708, 683 P.2d 571 (1984);[5] *State v. Freeburg*, 105 Wn. App. 492, 501, 20 P.3d 984 (2001) (stating that courts have uniformly condemned evidence of dangerous weapons, even though found in the possession of a defendant, which have nothing to do with the crime charged). But as we discussed above, the State provided strong evidence of Gomez Vasquez's guilt, including physical evidence of drugs from controlled buys and Gomez Vasquez's own admission that he sold quantities of methamphetamine and heroin. Gomez Vasquez fails to show that the outcome would have been different even had his trial counsel moved to exclude evidence of the gun and, thus, he cannot demonstrate prejudice. His ineffective assistance of counsel arguments fail.

## II. PROSECUTORIAL MISCONDUCT

Gomez Vasquez also argues that the prosecutor engaged in prosecutorial misconduct during redirect examination of Officer Buchanan and also at closing argument. We disagree.

---

[5] The *Rupe* court noted that many individuals view guns with great abhorrence and that some may react solely to the fact that someone who has committed a crime has dangerous weapons. 101 Wn.2d at 708.

A. STANDARD OF REVIEW AND RULES OF LAW

To establish prosecutorial misconduct, Gomez Vasquez has the burden of establishing that the challenged conduct was both improper and prejudicial. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). We review the prosecutor's conduct "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

When a defendant objects to alleged misconduct at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If a defendant fails to object to misconduct at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury. *State v. Thorgerson*, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). We focus more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *Emery*, 174 Wn.2d at 762.

B. ANALYSIS

Specifically, Gomez Vasquez argues that the prosecutor improperly elicited and exploited irrelevant and highly prejudicial evidence of the gun and ammunition. But he failed to object to either instance of alleged misconduct. Accordingly, he must first demonstrate that the prosecutor's conduct was flagrant and ill intentioned. The first instance of alleged misconduct occurred during the redirect examination of Officer Buchanan. On cross-examination, Gomez Vasquez questioned Officer Buchanan about the search of his residence and inquired as to what

evidence that search produced. Gomez Vasquez's trial counsel asked a series of questions meant to challenge the credibility of Gordon's information and to emphasize the lack of incriminating evidence police recovered when Gomez Vasquez's home was searched.

In response, the prosecutor elicited the testimony from Officer Buchanan regarding the seizure of the gun and ammunition in an attempt to show that, notwithstanding the failure to seize methamphetamine or marked bills, the search still resulted in the seizure of evidence tending to support Gordon's information that illegal activity occurred in the residence. The prosecutor asked whether Officer Buchanan found a gun and ammunition amongst several other items seized. While the seizure of the scale and other controlled substances may have supported Gordon's assertion that the residence was used for criminal drug activity, the gun and ammunition was irrelevant as it pertained to Gomez Vasquez and the charges against him.

Moreover, Gordon never alleged that Gomez Vasquez was armed during any of their previous encounters nor did Gordon claim to have seen guns inside Gomez Vasquez's residence. Because the connection between a criminal defendant and a firearm can have prejudicial effect, it was improper for the prosecutor to elicit testimony which created such a connection. But the prosecutor's conduct cannot be characterized as so flagrant and ill intentioned that a curative instruction could not have obviated any prejudice. *State v. Stenson*, 132 Wn.2d 668, 726-27, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). A limiting instruction could have easily cured what little prejudice may have resulted from Officer Buchanan's testimony.

In closing argument, the prosecutor used the "peg" approach in discussing the evidence; not to suggest that the items seized at the residence proved Gomez Vasquez's guilt, but attempted rather to bolster Gordon's credibility which the defense had vigorously attacked

11

throughout the trial. The prosecutor implored the jury to believe Gordon's testimony despite the relatively fruitless search. He said,

> [W]hy did Mr. Gordon tell you that they went to this house? What did they need? .... He said, a scale, right? What did Officer Buchanan tell you that he found in that house? A scale. I'm going to hang up another little peg for Mr. Gordon, right. Everything keeps supporting what he told you. You didn't find any methamphetamine, no, but I found some other drugs. You didn't find any methamphetamine, but I found a loaded handgun.

3 RP at 304. While a prosecuting attorney does have wide latitude in closing to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses, *Thorgerson*, 172 Wn.2d at 448, Gordon provided no testimony to support the notion that weapons were connected to Gomez Vasquez's drug sales or that any would be found during a search. Accordingly, it was improper for the prosecutor to attempt to connect the gun to Gomez Vasquez when it was not associated with the underlying charge. But again, Gomez Vasquez fails to show enduring prejudice that was not curable by instruction. *Thorgerson*, 172 Wn.2d at 443. A limiting instruction could have cured any resulting prejudice. Accordingly, we hold that Gomez Vasquez has failed to preserve this issue for review.

### III. RIGHT TO SELF-REPRESENTATION

Gomez Vasquez next argues that reversal is required because he was deprived of his constitutional right to self-representation when he filed a motion to proceed pro se a month before his trial, a motion that the court failed to consider. We hold that Gomez Vasquez's argument fails because he waived his self-representation right by proceeding through trial with representation by counsel.

Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United States Constitution.

WASH. CONST. art. I, § 22; *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing *Faretta*, 422 U.S. at 834)). "[U]njustified denial of this [pro se] right requires reversal." *Stenson*, 132 Wn.2d at 737. But both the United States Supreme Court and our Supreme Court have held that courts are required to indulge in "'every reasonable presumption against a defendant's waiver of his or her right to counsel.'" *Madsen*, 168 Wn.2d at 504 (internal quotation marks omitted) (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999), *cert. denied*, 531 U.S. 1125 (2001)).

The right to proceed pro se is neither absolute nor self-executing. *State v. Woods*, 143 Wn.2d 561, 586, 23 P.3d 1046, *cert. denied*, 534 U.S. 964 (2001). When a defendant requests pro se status, the trial court must determine whether the request is unequivocal and timely. *Stenson*, 132 Wn.2d at 737. Even when a request is unequivocal, a defendant may still waive the right of self-representation by subsequent words or conduct. *State v. Vermillion*, 112 Wn. App. 844, 851, 51 P.3d 188 (2002) (citing *State v. Luvene*, 127 Wn.2d 690, 699, 903 P.2d 960 (1995)), *review denied*, 148 Wn.2d 1022 (2003).

Here, while he was represented by counsel, Gomez Vasquez filed a pro se motion demanding to exercise his rights to self-representation along with what appears to be a request for standby counsel to assist him in filing motions, conducting interviews, and accessing forms. But there is no Sixth Amendment right to "'hybrid representation'" through which defendants may serve as co-counsel with their attorneys. *State v. DeWeese*, 117 Wn.2d 369, 379, 816 P.2d 1 (1991) (quoting *State v. Bebb*, 108 Wn.2d 515, 524, 740 P.2d 829 (1987)). Furthermore, though the motion was received and stamped, there is no indication in the record that Gomez Vasquez

ever noted the issue for hearing. Moreover, Gomez Vasquez proceeded through the entirety of his trial with representation by his appointed counsel. Gomez Vasquez did not bring the motion to the court's attention at any point during trial nor did he express any desire to renew his request despite ample opportunity to address the court. It was only after the jury returned a guilty verdict, on the day that was originally scheduled for sentencing, that Gomez Vasquez both voiced his frustration over the court's failure to address his earlier motion and also alleged that his trial counsel had been ineffective. Accordingly, we hold that Gomez Vasquez, by proceeding with counsel throughout his trial, waived his right of self-representation.

## IV. STATEMENT OF ADDITIONAL GROUNDS

Gomez Vasquez raises a litany of issues in his SAG. He appears to argue that (1) probable cause to issue a search warrant was lacking because the affidavit of probable cause contained false and misleading statements, (2) the State failed to demonstrate that Gordon was a reliable CI under the basis of knowledge and veracity prongs of *Aguilar-Spinelli*,[6] (3) the trial court erred in denying Gomez Vasquez's motion to suppress post-*Miranda* statements, (4) the State did not prove the delivery element of the charge because police did not actually see an exchange and no audio or video recording exists, (5) reversal is required because the court continued the case over Gomez Vasquez's objections in violation of his speedy trial rights, and (6) failure to identify "CI #2" was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We address each of these arguments in turn. We hold that these claims lack merit.

---

[6] *See Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

14

A. PROBABLE CAUSE TO ISSUE SEARCH WARRANT

Gomez Vasquez argues that the facts and circumstances leading to the issuance of the search warrant did not support a finding of probable cause. He alleges that the search warrant affidavit contained false and misleading statements such that he should have been entitled to a *Franks*[7] hearing. He argues further that there was not a sufficient nexus between the place to be searched and the item to be seized. We hold that probable cause existed and that any mistakes in the affidavit were not deliberate falsifications nor did the affiant recklessly disregard the truth. We conclude further that there was a nexus between the criminal activity, the items to be seized, and the place to be searched.

A search warrant may only issue upon a determination of probable cause. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). An application for a warrant must state the underlying facts and circumstances on which it is based in order to facilitate a detached and independent evaluation of the evidence by the issuing magistrate. *Thein*, 138 Wn.2d at 140. A magistrate exercises judicial discretion in determining whether to issue a warrant and that decision is reviewed for abuse of discretion. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002). We accord great deference to the magistrate and view the supporting affidavit for a search warrant in light of common sense. *Vickers*, 148 Wn.2d at 108.

Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of criminal activity can be found at the place to be searched. *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). Accordingly, "probable

---

[7] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched." *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997) (citing 1 WAYNE R. LAFAVE, SEARCH & SEIZURE § 3.7(d), at 372 (3d ed. 1996)).

Here, Gomez Vasquez spends significant time and effort arguing that falsifications and misrepresentations in the affidavit lead to an erroneous finding of probable cause. But many of the alleged misrepresentations are contained in the prosecuting attorney's declaration of probable cause filed after the search warrant had been executed, instead of the affidavit requesting the search warrant.[8] The only mistake contained in Officer Buchanan's affidavit was his use of the wrong name twice in one paragraph. This was clearly a clerical error because Officer Buchanan used Gomez Vasquez's correct name and date of birth in between the two mistaken instances. Viewing the affidavit in a light of common sense it is clear that Officer Buchanan intended to refer only to Gomez Vasquez. It was not an abuse of discretion for the magistrate to ignore these inconsistencies because a defendant is entitled to a *Franks* hearing only when he submits an offer of proof showing deliberate falsehood or reckless disregard for the truth; negligent or innocent mistakes are insufficient. *Vickers*, 148 Wn.2d at 114.

Gomez Vasquez cites *Maddox* as further support that probable cause to issue the search warrant was lacking. Gomez Vasquez attempts to analogize this case with *Maddox* because, like *Maddox*, the search of Gomez Vasquez's residence revealed no physical evidence of methamphetamine. But *Maddox* is clearly distinguishable. There, it was not the fact that no methamphetamine was found which gave rise to the argument that probable cause was lacking,

---

[8] Our review is limited to the four corners of the probable cause affidavit. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

but rather the fact that law enforcement learned before executing the warrant that an immediate search would likely not produce methamphetamine. *Maddox*, 152 Wn.2d at 503, 507. Furthermore, the Supreme Court held that redetermination of probable cause in *Maddox* was unnecessary because Maddox's statements to the CI did not affect probable cause supporting the warrant's authorization to search for paraphernalia and other evidence of drug dealing. 152 Wn.2d at 513.

Here, law enforcement involved in the search of Gomez Vasquez's residence did not receive any information prior to the warrant's execution suggesting that they would no longer find methamphetamine in the house. Even had the officers been so informed, this information would not necessarily have negated probable cause when the warrant also authorized the officers to search for paraphernalia, books, records, and weapons associated with narcotics trafficking.

Last, Gomez Vasquez appears to argue that the search warrant lacked the requisite nexus between the place to be searched and the items to be seized. In the days and weeks before the search warrant was executed, Gordon informed law enforcement that he had observed Gomez Vasquez with dealer quantities of methamphetamine and that Gordon could arrange to purchase drugs. Tacoma police conducted surveillance of Gomez Vasquez's residence as a controlled drug buy took place there. Within 10 days of the search, a second CI approached police and informed them that he or she had been at the residence and had seen packaged methamphetamine and that Gomez Vasquez had been distributing methamphetamine from that location for several weeks. Accordingly, a sufficient nexus existed between Gomez Vasquez, his residence, and evidence of methamphetamine distribution to determine that probable cause existed. We hold that the magistrate's finding of probable cause was not an abuse of discretion.

## B. Gordon's Reliability

Gomez Vasquez contends that the State did not sufficiently demonstrate that Gordon was a reliable informant such that a search warrant could issue based on the information he provided. Washington continues to follow the *Aguilar-Spinelli* standard for establishing probable cause via an unidentified informant. *State v. Lyons*, 174 Wn.2d 354, 359 n.1, 275 P.3d 314 (2012). This standard has two prongs—"basis of knowledge" and "veracity." *State v. Ollivier*, 178 Wn.2d 813, 849, 312 P.3d 1 (2013). The basis of knowledge prong requires that the affidavit contain "'sufficient facts to convince a reasonable person of the probability the defendant is engaged in criminal activity and that evidence of criminal activity can be found at the place searched.'" *Ollivier*, 178 Wn.2d at 849 (quoting *Lyons*, 174 Wn.2d at 359 & n.2). Furthermore, this prong may be satisfied by a showing that the informant had personal knowledge of the facts provided to the affiant. *Vickers*, 148 Wn.2d at 112.

The veracity prong requires that the affidavit contain information from which a determination can be made that the informant is credible or the information reliable. *State v. Jackson*, 102 Wn.2d 432, 435, 688 P.2d 136 (1984). The most common way to satisfy this prong is to evaluate the informants "track record," i.e., has he provided accurate information to the police a number of times in the past? *Jackson*, 102 Wn.2d at 437. But a successful "track record" as a police informant is not the only method of demonstrating the present reliability of a CI—successful controlled buys may themselves be sufficient to establish a CI's reliability. *State v. Casto*, 39 Wn. App. 229, 233, 692 P.2d 890 (1984), *review denied*, 103 Wn.2d 1020 (1985). As the *Casto* court explained,

> In a "controlled buy," an informant claiming to know that drugs are for sale at a particular place is given marked money, searched for drugs, and observed while sent into the specified location. If the informant "goes in empty and comes out

18

full," his assertion that drugs were available is proven, and his reliability confirmed. Properly executed, a controlled buy can thus provide the facts and circumstances necessary to satisfy *both* prongs of the test for probable cause.

39 Wn. App. at 234 (quoting 1 WAYNE R. LAFAVE, SEARCH & SEIZURE § 3.3(b) at 512 (1978)).

Here, Gordon testified that he had known Gomez Vasquez personally for approximately a year. Gordon, who had already conducted successful reliability buys told Officer Buchanan that he could buy drugs from Gomez Vasquez. During the controlled buy, Gordon "'went in empty and came out full.'" *Casto*, 39 Wn. App. at 234 (quoting 1 WAYNE R. LAFAVE, SEARCH & SEIZURE § 3.3(b) at 512 (1978)). In his affidavit, Officer Buchanan explained that Gordon's reliability as a CI was bolstered by his extensive involvement in the local drug scene, including a working knowledge of the street prices and packaging methods of various controlled substances. Officer Buchanan also stated that Gordon had provided information about drug trafficking and general criminal activity that proved to be true and correct.

Accordingly, we hold that Gordon satisfies both prongs of the *Aguilar-Spinelli* test and, therefore, the magistrate did not abuse his discretion in finding that Officer Buchanan's affidavit was sufficient to support a finding of probable cause to search Gomez Vasquez's residence.

### C. SUPPRESSION OF POST-*MIRANDA* STATEMENTS

Gomez Vasquez asserts that the trial court erred when it ruled that his statements to Officer Buchanan during the execution of the search warrant were admissible at his trial because Officer Buchanan testified that Gomez Vasquez appeared either tired or high. We hold that substantial evidence supports the trial court's finding that Gomez Vasquez knowingly and voluntarily waived his *Miranda* rights.

We review the trial court's evidentiary rulings for abuse of discretion. *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). A trial court abuses its discretion if its decision is

19

manifestly unreasonable or based on untenable grounds or reasons. *State v. Wilson*, 144 Wn. App. 166, 183, 181 P.3d 887 (2008). "[T]he rule to be applied in confession cases is that findings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged, and, if challenged, they are verities if supported by substantial evidence in the record." *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Due process requires that a confession be voluntary and free of police coercion. *State v. Reuben*, 62 Wn. App. 620, 624, 814 P.2d 1177, *review denied*, 118 Wn.2d 1006 (1991). Whether a confession is voluntary depends on the totality of the circumstances under which it was made. *State v. Aten*, 130 Wn.2d 640, 663-64, 927 P.2d 210 (1996). This examination includes considerations of the location, length, and continuity of the interrogation; the defendant's maturity, education, physical condition, and mental health; and whether the police advised the defendant of his or her *Miranda* rights. *State v. Unga*, 165 Wn.2d 95, 101, 196 P.3d 645 (2008). We do not disturb a trial court's determination that statements were voluntary if there is substantial evidence in the record from which the trial court could have found voluntariness by a preponderance of the evidence. *Aten*, 130 Wn.2d at 664.

Here, the trial court found that Gomez Vasquez's statements were made after officers properly conducted *Miranda* warnings from a prepared card, correctly advising Gomez Vasquez of all of his rights. The trial court determined that Gomez Vasquez understood his rights and opted to speak to Officer Buchanan without coercion, thereby knowingly, voluntarily, and intelligently waiving his *Miranda* rights.

Testimony at the CrR 3.5 hearing revealed that Gomez Vasquez told officers that he understood his rights. Gomez Vasquez never claimed that he did not understand the English language, that he was unable to hear the officers, or that he needed an attorney. Despite his apparent understanding of his rights, Gomez Vasquez answered affirmatively when asked whether he was willing to speak with officers. Officer Buchanan did testify that at some point during their conversation, he noticed that Gomez Vasquez appeared to be either half asleep or like someone who may have been high. But intoxication, though it may be considered a factor, is not dispositive of voluntariness. *Aten*, 130 Wn.2d at 664.

Moreover, Officer Smith testified that Gomez Vasquez was argumentative and disrespectful when law enforcement began its search of his residence. Officer Smith stated that Gomez Vasquez asked officers what they were doing, told them they had no right to be there, and demanded to be read a search warrant. Thus, Gomez Vasquez was coherent enough to articulate his understanding of lawful procedure and to assert his rights in that sense. Accordingly, a sufficient quantity of evidence exists in the record to persuade a fair-minded, rational person of the truth of the trial court's finding that Gomez Vasquez's statements were given knowingly, voluntarily, and intelligently. *Hill*, 123 Wn.2d at 644. Therefore, the trial court did not abuse its discretion in ruling that the statements were admissible.

## D. INSUFFICIENT EVIDENCE OF DELIVERY ELEMENT

Gomez Vasquez asserts that the State failed to prove his guilt because there was insufficient evidence on the delivery element of his charge. Specifically, Gomez Vasquez argues that there was no audio, video, or eyewitness account of Gomez Vasquez's transaction with Gordon. We hold that Gomez Vasquez's claim fails because the State presented sufficient evidence of all elements of the crime.

21

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). The relevant question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *Wentz*, 149 Wn.2d at 347). In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We interpret the evidence "'most strongly against the defendant.'" *State v. Hernandez*, 172 Wn. App. 537, 543, 290 P.3d 1052 (2012) (internal quotation marks omitted) (quoting *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993)), *review denied*, 177 Wn.2d 1022 (2013). We consider both circumstantial and direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To find Gomez Vasquez guilty of unlawful delivery of a controlled substance, the jury was instructed that the State must prove the following elements beyond a reasonable doubt:

> (1) That on or about the 18th day of August, 2011, the defendant delivered a controlled substance;
> (2) That the defendant knew that the substance delivered was a controlled substance; Methamphetamine; and
> (3) That the acts occurred in the State of Washington.

CP at 68. The jury was also instructed that "[d]eliver means the actual or constructive or attempted transfer of a controlled substance from one person to another." CP at 67. The State presented evidence that Officer Buchanan took Gordon to a designated meeting location to purchase drugs from Gomez Vasquez. Gordon met with Gomez Vasquez and the two men traveled to a residence in search of a working scale. Members of the Special Investigation Unit

22

maintained surveillance on the moving vehicles. Gordon entered the residence where Gomez Vasquez weighed and bagged methamphetamine, a portion of which he handed to Gordon. Gordon then delivered the drugs he had been given to Officer Buchanan.

Gomez Vasquez cites no authority that purports to require audio or video recordings or eyewitness accounts of controlled drug transactions to prove elements of a delivery charge. Furthermore, our courts have upheld convictions for possession and delivery of controlled substances where police witness their CI entering an apartment complex but were unsure as to which apartment he actually entered. *See State v. Lane*, 56 Wn. App. 286, 295-96, 786 P.2d 277 (1989). Here, the State presented enough evidence for a rational fact finder to have found the essential elements beyond a reasonable doubt. We hold that sufficient evidence supported Gomez Vasquez's conviction.

### E. TIME FOR TRIAL AND SPEEDY TRIAL VIOLATION

#### 1. CRR 3.3 TIME FOR TRIAL RIGHT

Gomez Vasquez next argues that his CrR 3.3 rights were violated because the trial court continued the case several times, each time over Gomez Vasquez's objection. We hold that no such violation occurred because the continuances were properly granted and the time for trial period was properly computed considering the applicable exclusions.

CrR 3.3 accords with the United States Supreme Court's determination that states can prescribe reasonable periods for commencement of trials consistent with constitutional standards. *Ollivier*, 178 Wn.2d at 823 (citing *Barker v. Wingo*, 407 U.S. 514, 524, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). Under CrR 3.3(b)(1)(i), an individual held in custody pending trial must be tried within 60 days of arraignment. But certain time periods are excluded from the computation of

time, including continuances granted by the trial court. CrR 3.3(e). With regard to continuances, CrR 3.3(f)(2) explains,

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. . . . The court must state on the record or in writing the reasons for the continuance. The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay.

Here, Gomez Vasquez was in custody pending trial, so the 60-day rule applied. CrR 3.3(b)(1)(i). There were a total of five continuances and Gomez Vasquez objected in each instance. Three of the motions were brought upon agreement of the State and counsel for Gomez Vasquez for reasons associated with trial preparation. The trial court ordered the final two continuances on its own accord for administrative necessity because there were no courtrooms available for use.

As mentioned, Gomez Vasquez's own counsel sought three of the continuances about which he complains. Consequently, as the rule expressly provides, any objection is therefore waived. *Ollivier*, 178 Wn.2d at 824; CrR 3.3(f)(2). The trial court stated that the final two continuances it initiated were necessary for administrative reasons because there were no court rooms available. Our Supreme Court has concluded, however, that although trial preparation may be a valid reason for a continuance, court congestion is not. *State v. Flinn*, 154 Wn.2d 193, 200, 110 P.3d 748 (2005). Accordingly, the first three continuances sought for trial preparation needs were for good cause and were thus excluded in the time for trial computation. CrR 3.3(e)(3). But the last two continuances, sought by the court for administrative necessity, resulted in an additional delay of five days which did count in the time for trial computation. The case was first continued on October 26 when the case was 47 total days old and 30 days

remained in the time for trial period according to the record. Trial was continued until December 13. On December 13, the case was again continued until January 26, 2012. On January 26, the case was continued until March 1. These continuances were for trial preparation and, therefore, did not count against the 60-day time for trial period. Accordingly, as of March 1, 30 days still remained in the time for trial period. The final two continuances are included in computing the time for trial. On March 1, the case was continued until March 5 and on March 5 it was continued to March 6. Thus, five additional days ran in the time for trial period and 25 days remained. There is no violation of CrR 3.3(b)(1)(i) as 60 days did not elapse.[9] Accordingly, we hold that Gomez Vasquez's time for trial right was not violated.

## 2. CONSTITUTIONAL SPEEDY TRIAL RIGHT

Gomez Vasquez also argues that his speedy trial rights under the state and federal constitutions were violated as a result of the several continuances to which he objected. We disagree.

Both the United States Constitution and the Washington Constitution provide a criminal defendant with the right to a speedy public trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Our state constitution "requires a method of analysis substantially the same as the federal Sixth Amendment analysis and does not afford a defendant greater speedy trial rights." *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009). We review de novo constitutional speedy trial claims. *Iniguez*, 167 Wn.2d at 280.

A defendant's constitutional rights to a speedy trial attach when a charge is filed or an arrest is made, whichever occurs first. *State v. Corrado*, 94 Wn. App. 228, 232, 972 P.2d 515,

---

[9] On the order for the penultimate continuance, the trial court stated that 26 days of speedy trial time remained.

25

*review denied*, 138 Wn.2d 1011 (1999). Some pretrial delay is often "inevitable and wholly justifiable," *Doggett v. United States*, 505 U.S. 647, 656, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992), and any "inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522. As first articulated by the United States Supreme Court in *Barker*, we consider (1) the length of pretrial delay, (2) the reason for delay, (3) the defendant's assertion of his or her right, and (4) prejudice to the defendant. 407 U.S. at 530.

But to trigger this analysis, the defendant must first demonstrate that the "interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651-52 (quoting *Barker*, 407 U.S. at 530-31). We consider the duration of pretrial custody, the complexity of the charges, and the extent to which a case involves a reliance on eyewitness testimony. *Iniguez*, 167 Wn.2d at 292 (citing *Barker*, 407 U.S. at 531 & n.31). In *Iniguez*, our Supreme Court found "presumptive[ ] prejudic[e]" based upon a delay of more than eight months. 167 Wn.2d at 291-92. The court found it important that (1) the defendant had remained in custody throughout this period; (2) the charges against him were not complex; and (3) such a lengthy delay "could result in witnesses becoming unavailable or their memories fading," thus impairing his defense. *Iniguez*, 167 Wn.2d at 292. The court took pains to note that this eight-month delay was, however, "just beyond the bare minimum needed to trigger the *Barker* inquiry." *Iniguez*, 167 Wn.2d at 293.[10]

Here, as in *Iniguez*, Gomez Vasquez remained in custody pending trial and the charges against him were not complex. But the length of delay in Gomez Vasquez's trial was shorter

---

[10] *See also Ollivier*, 178 Wn.2d at 828 (23-month delay enough to trigger *Barker* analysis).

than the delay in *Iniguez*. Gomez Vasquez's trial began almost exactly six months after his arrest. Although the State's case rested in part on the eyewitness testimony of Gordon, it also rested largely on documentary evidence recorded by police during the investigation of Gomez Vasquez. Thus, it appears unlikely that Gomez Vasquez has met the threshold requirement to trigger the *Barker* test. Assuming Gomez Vasquez did trigger the *Barker* analysis, we examine the factors.

The first two *Barker* factors concern the length and reason for the delay. *Barker*, 407 U.S. at 530. The State filed charges on September 7, 2011, and trial began on March 6, 2012. Notwithstanding the fact that the charges are not complex and even though Gomez Vasquez did spend the entire pretrial period in incarceration, less than six months is not necessarily an undue delay. *Iniguez*, 167 Wn.2d at 293. Regarding the reason for delay, careful assessment is necessary to sort the legitimate or neutral reasons for delay from improper reasons. A court looks to each party's responsibility for the delay, and different weights are assigned to delay, primarily related to blameworthiness and the impact of the delay on defendant's right to a fair trial. *Barker*, 407 U.S. at 531. Courts often hold that even where continuances are sought over the defendant's objection, delay caused by defendant's counsel is charged against the defendant under the *Barker* balancing test. *Ollivier*, 178 Wn.2d at 834. And delay caused by the defense weighs against the defendant because "'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation.'" *Vermont v. Brillon*, 556 U.S. 81, 90-91, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009) (alteration in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). Here, defense counsel's stipulated

continuances accounted for approximately four months of delay.[11] Therefore, the first two factors weigh in favor of the State.

The third factor, the defendant's assertion of his rights, clearly weighs in favor of Gomez Vasquez because he objected to each continuance. Gomez Vasquez refused to sign each order granting the continuance and he filed a pro se motion specifically asserting his speedy trial rights and objecting to any further continuance.

The last factor is prejudicial to the defendant. Prejudice is judged by looking at the effect on the interests protected by the right to a speedy trial: (1) to prevent harsh pretrial incarceration, (2) to minimize the defendant's anxiety and worry, and (3) to limit impairment to the defense. *Iniguez*, 167 Wn.2d at 295. Because Gomez Vasquez was incarcerated throughout the pretrial period, there was likely anxiety and worry.[12] But as explained in detail above, the evidence against Gomez Vasquez was significant and much of it was documented by law enforcement. Gomez Vasquez's primary defense was that Gordon was not a credible informant and witness. A delay of less than six months did not impair this defense. On balance, the totality of the circumstances here does not support a finding of a speedy trial violation of constitutional magnitude. Even assuming he meets the threshold for a *Barker* analysis, three of the four factors weigh against Gomez Vasquez. We hold that no speedy trial violation occurred.

---

[11] Trial was originally set for November 1, 2011, but the parties agreed to three continuances, pushing the trial date back until March 1, 2012.

[12] *But see Barker*, 407 U.S. at 534 (10-month pretrial incarceration not prejudicial absent actual impairment of defense).

### F. FAILURE TO IDENTIFY CI #2

Gomez Vasquez contends that his right to a fair trial was violated because the State did not identify "CI #2" who apparently informed the police that he or she had also observed Gomez Vasquez dealing drugs from the residence in the days before police executed the search warrant there. Gomez Vasquez also claims that this failure to disclose is a violation of the rules initially set forth in *Brady*. We hold that Gomez Vasquez's claim fails because the State's anonymity of CI #2 did not infringe upon Gomez Vasquez's constitutional rights.

It is well established that the State has a legitimate interest in protecting the identity of CIs. *State v. Moen*, 150 Wn.2d 221, 230, 76 P.3d 721 (2003). The ability to protect an informant's identity from disclosure is termed the "informers privilege," which is the State's right to withhold from disclosure the identity of persons who provide information to law enforcement concerning the commission of crimes. *State v. Atchley*, 142 Wn. App. 147, 155, 173 P.3d 323 (2007) (citing *State v. Harris*, 91 Wn.2d 145, 148, 588 P.2d 720 (1978)). The privilege is recognized in Washington by both statute and court rule. RCW 5.60.060(5); CrR 4.7(f)(2).[13] Disclosure is only required if the failure to disclose will infringe upon the constitutional rights of the defendant. CrR 4.7(f)(2). Courts typically must balance several competing factors in determining whether to disclose a CI's identity, but Washington courts have held that where the CI provided information relating only to probable cause rather than the

---

[13] CrR 4.7(f)(2) states,
> Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant. Disclosure of the identity of witnesses to be produced at a hearing or trial shall not be denied.

29

defendant's guilt or innocence, disclosure of the CI's identity is not required. *Atchley*, 142 Wn. App. at 156 (citing *State v. Casal*, 103 Wn.2d 812, 816, 699 P.2d 1234 (1985)).

Here, the information provided by CI #2 appeared only in the declaration for determination of probable cause. CI #2's information only corroborated information that Gordon had already provided or was capable of providing. Moreover, CI #2 was not called as one of the State's witnesses and therefore was uninvolved in the "guilt phase" of the trial. Accordingly, the fact that the identity of CI #2 was not disclosed did not infringe upon Gomez Vasquez's constitutional rights.

Furthermore, the failure to disclose the identity of CI #2 was not a violation of the *Brady* rules. Under the Supreme Court's current jurisprudence to establish a *Brady* violation, a defendant must demonstrate the existence of each of three necessary elements: "[(1)] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). Gomez Vasquez cannot show that CI #2's information was favorable to him or that prejudice ensued from suppression of his or her identity. CI #2's information inculpated Gomez Vasquez, it was not exculpatory. Accordingly, his claim fails.

## G. Meritless Claims

Gomez Vazquez makes several additional claims in his SAG. These claims include (1) that Gomez Vasquez's mere proximity to seized drugs was insufficient to support a charge of possession, (2) Gomez Vasquez's conviction should be reversed because some of Gordon's reliability buys were conducted for an officer other than Officer Buchanan, (3) Officer Buchanan

committed official misconduct for including false information in his affidavit and complaint for search warrant, (4) Gordon failed to complete his obligations under his contract with law enforcement, (5) Gordon was not reliable because he was cooperating only to stay out of prison, (6) reversal is required because the prosecution should have given Gomez Vasquez *Miranda* warnings again after filing an amended information, and (7) reversal is required because Gomez Vasquez did not sign a *Miranda* rights card. Gomez Vasquez has failed to inform us of the nature and occurrence of these alleged errors and we are not required to search the record in support of these claims. RAP 10.10(c). We hold that each claim contained in Gomez Vasquez's SAG fails.

## V. PERSONAL RESTRAINT PETITION

Gomez Vasquez filed three PRPs which are consolidated with this direct appeal. In his PRPs, Gomez Vasquez appears to argue that his restraint was unlawful because (1) his due process right to be heard was violated by the trial court's failure to address his pretrial motions; (2) the trial court should have suppressed illegally seized evidence; (3) he was denied a fair trial because the impaneled jury included 11 women and 1 man, none of whom were Hispanic; (4) the trial court erred in failing to instruct the jury as to the delivery element of his charge; and (5) his offender score was erroneously miscalculated. We deny the PRPs because Gomez Vasquez cannot demonstrate actual prejudice or a complete miscarriage of justice relating to any of his claims.

We consider the arguments raised in a PRP under one of two different standards, depending on whether the argument is based on constitutional or nonconstitutional grounds. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). A petitioner raising constitutional error must show that the error caused actual and substantial prejudice. *In re Pers.*

31

*Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). In contrast, a petitioner raising nonconstitutional error must show a fundamental defect resulting in a complete miscarriage of justice. *Elmore*, 162 Wn.2d at 251. Additionally, Gomez Vasquez must support his claims of error with a statement of the facts on which his claim of unlawful restraint is based and the evidence available to support his factual allegations. RAP 16.7(a)(2); *In re Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988); *see also In re Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). Gomez Vasquez must present evidence showing his factual allegations are based on more than mere speculation, conjecture, or inadmissible hearsay. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). Bald assertions and conclusory allegations are not sufficient. *Rice*, 118 Wn.2d at 886.[14]

First, Gomez Vasquez argues that his right to due process of law was violated when the trial court failed to address pretrial motions[15] that he composed and filed pro se. But as explained above, Gomez Vasquez neglected to request hearings or otherwise bring these motions to the trial court's attention until after the jury returned a guilty verdict. Furthermore, Gomez Vasquez was given the opportunity to address the court before he was sentenced. Gomez Vasquez expressed frustration that the trial court had not considered his pro se motions. In

---

[14] Several of Gomez Vasquez's arguments constitute bald assertions or conclusory allegations unsupported by facts or evidence. These contentions include (1) the prosecutor's violation of a motion in limine during voire dire, (2) that Gomez Vasquez was subjected to malicious prosecution, (3) that the prosecutor suppressed documents, (4) that defense counsel could have objected with more frequency, (5) that the magistrate who issued the search warrant was unaware of Gordon's contract to work as a CI, and (6) that Pierce County Jail staff denied Gomez Vasquez access to the courts to "argue[ ] all illegal issues before the court took its course." PRP (Feb. 26, 2013) at 20. We decline to address these claims for the reasons mentioned above.

[15] These included Gomez Vasquez's motions to represent himself and his motion objecting to continuance of his trial date, both of which were central to other issues already addressed.

response, the trial judge stated that he had read those motions, that it was unclear what relief Gomez Vasquez sought, but that he would be happy to hear from Gomez Vasquez further. Gomez Vasquez addressed the court at length, imploring it to consider his new motions for a new trial and arrest of judgment.

The trial court agreed to consider the motions, set sentencing over for one week, and subsequently denied the motions at Gomez Vasquez's next appearance. Accordingly, Gomez Vasquez cannot show that he was denied the right to be heard and, moreover, he cannot demonstrate that any error caused actual and substantial prejudice. *Elmore*, 162 Wn.2d at 251. This argument fails.

Second, Gomez Vasquez argues that the trial court should have suppressed the items seized from his residence when law enforcement executed the search warrant. Gomez Vasquez appears to argue that the seizures were a product of an illegal search, but Gomez Vasquez never moved to suppress the evidence at trial. Consequently, to demonstrate actual prejudice, Gomez Vasquez must establish from an adequate record that the trial court likely would have granted a suppression motion. *State v. Contreras*, 92 Wn. App. 307, 312, 966 P.2d 915 (1998). But Gomez Vasquez cannot make such a showing. As explained above, the State established Gordon's reliability under both prongs of the *Aguilar-Spinelli* test. Therefore, Gordon's information suffices to support a determination of probable cause. Also as explained above, there was a sufficient nexus between the place to be searched and the items to be seized. Accordingly, the search of Gomez Vasquez's residence and the subsequent seizure of physical evidence were lawful. The trial court would not have granted a motion to suppress and, therefore, Gomez Vasquez cannot show actual prejudice. This argument fails.

Third, Gomez Vasquez argues that he was denied a fair trial because there were 11 women on the jury and no jury member was Hispanic. Gomez Vasquez is entitled to a trial by an impartial jury under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010). But Gomez Vasquez fails to show how a jury composed of 11 women and 1 man resulted in partiality or bias. Gomez Vasquez does not argue that preemptory strikes were used inappropriately or that challenges for cause were somehow improperly geared towards removal of the prospective male jurors. Ultimately, Gomez Vasquez fails to present evidence showing that his factual allegations are based on more than mere speculation or conjecture. *Rice*, 118 Wn.2d at 886. Gomez Vasquez has not demonstrated actual prejudice. Accordingly, this claim fails.

Fourth, Gomez Vasquez contends that he is entitled to a new trial because the trial court committed reversible error in failing to instruct the jury regarding the delivery element of his charge. But Gomez Vasquez is mistaken. The jury was instructed as to each element necessary to commit the crime of unlawful delivery of a controlled substance. Furthermore, the jury was also instructed as to the legal definition of the term "deliver." Therefore, this claim fails.

Fifth, Gomez Vasquez argues that his offender score was calculated improperly because his felonies for taking a motor vehicle without permission and felony eluding should have "washed out" under RCW 9.94A.525. But Gomez Vasquez misreads the applicable statutory provision. Taking a motor vehicle without permission and felony eluding are class C felonies. RCW 9A.56.075(2); RCW 46.61.024(1). RCW 9.94A.525(2)(c) governs the "washing out" of class C felonies and provides,

> Except as provided in (e) of this subsection, class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

The crimes which Gomez Vasquez contends should wash out occurred in 1996. He also committed crimes in 1998, 2002, 2003, and 2005. Accordingly, as of the 2005 crime, all of Gomez Vasquez's prior felonies would have been considered for purposes of his offender score. During his bail hearing, counsel for Gomez Vasquez stated that Gomez Vasquez had been released from custody in 2009. Although the record does not reveal whether Gomez Vasquez was in custody as a result of the 2006 sentence,[16] it is clear that if he was in custody in 2009, then Gomez Vasquez necessarily could not have spent five consecutive years *in the community* as the statute requires. Accordingly, this claim also fails. We deny Gomez Vasquez's PRP.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.

---

[16] The 2005 crime was unlawful possession of a controlled substance with intent to distribute.

35