98 P.3d 1199 (2004)
STATE of Washington, Respondent,
v.
Christopher Dorian MADDOX, Petitioner.
No. 74076-3.
Supreme Court of Washington, En Banc.
Argued March 9, 2004.
Decided October 14, 2004.
*1200 Steven Whitman Thayer, Vancouver, for Petitioner.
Leann Shill Larson, Richard Alan Melnick, Pros. Attys. Office, Vancouver, for Respondent.
*1201 IRELAND, J.
In this case we consider whether probable cause must be redetermined by a magistrate when information acquired after issuance of a search warrant, but before its execution, negatively impacts probable cause. We hold that when law enforcement receives information that, if believed, negates probable cause, the officers must return to the magistrate for reevaluation of probable cause. Because probable cause was not negated in this case, we affirm the Court of Appeals.

FACTS
On September 15, 2000, an informant for the Clark-Skamania Drug Task Force made a controlled buy of approximately one ounce of methamphetamine from the defendant, Christopher Dorian Maddox, at Maddox's home. The informant asked if Maddox had any more methamphetamine to sell. Maddox told the informant "maybe," if the informant would bring back cash. Clerk's Papers (CP) at 10.
On September 18, 2000, Detective Mary Parsons obtained a search warrant in Clark County District Court to search Maddox's residence. The affidavit for the search warrant described the September 15 controlled buy. The affidavit also stated that the informant had purchased methamphetamine from Maddox approximately 35 times over the prior four years.
The warrant authorized a search of Maddox's house for methamphetamine; paraphernalia used in the distribution of methamphetamine, including scales, baggies, and other items; currency; and books, photographs, and other records related to the manufacture, sale, and distribution of methamphetamine. Ex. 1, at 2-3. The warrant required the search occur within 10 days in accordance with CrR 2.3(c).
The State did not execute the warrant immediately. Detective Parsons testified that the task force was concerned that immediate execution of the warrant would jeopardize other investigations in which the informant was participating.
On September 21, 2000, the informant made another controlled buy from Maddox at Maddox's home. This time the informant did not have enough money to purchase the prepackaged one-ounce methamphetamine, and Maddox refused to split a package into smaller quantities. Therefore, Maddox accepted the informant's money as partial payment for one ounce of methamphetamine and "fronted" the informant the balance.
On September 27, 2000, Maddox demanded by phone that the informant pay the balance of money owed to him "now." Report of Proceedings (RP) at 42. The informant went to Maddox's home with $1,000 cash from the task force to pay the drug debt and also to complete a third controlled buy of methamphetamine. Maddox collected $720 as payment of the informant's debts. Maddox told the informant that he did not have any methamphetamine to sell to the informant; he said that "he was out and that he would have some in a couple of days." RP at 39.
On September 28, 2000, the task force executed the search warrant. Officers seized an electronic scale, 881.6 grams of marijuana, 45 pills of ecstasy, and $2,100 in cash. No methamphetamine was found.
The State charged Maddox with two counts of unlawful delivery of methamphetamine, one count of unlawful possession of marijuana with intent to deliver, and one count of unlawful possession of ecstasy with intent to deliver. Later, the State amended the complaint, adding a school-zone enhancement to each count. The two methamphetamine counts were severed and following a jury trial, Maddox was acquitted.
Prior to the bench trial for the two remaining counts, unlawful possession with intent to deliver ecstasy and marijuana, Maddox filed a motion to suppress the ecstasy and marijuana seized under the warrant. The court denied the motion to suppress and found Maddox guilty on both counts. Maddox appealed and the Court of Appeals affirmed. This court granted discretionary review.

ANALYSIS

Issue 1. Were the police required to return to the magistrate for a redetermination of probable cause when they learned that Maddox said he did not have any methamphetamine to sell?
The fourth amendment to the United States Constitution provides that warrants *1202 may be issued only upon a showing of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Constitution requires that a detached and neutral magistrate or judge make the determination of probable cause. State v. Smith, 16 Wash.App. 425, 427, 558 P.2d 265 (1976).[1]
Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched. State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999). It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The magistrate is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit. In re Pers. Restraint of Yim, 139 Wash.2d 581, 596, 989 P.2d 512 (1999) (quoting State v. Helmka, 86 Wash.2d 91, 93, 542 P.2d 115 (1975)).
A delay in executing the warrant may render the magistrate's probable cause determination stale. State v. Thomas, 121 Wash.2d 504, 513, 851 P.2d 673 (1993). Common sense is the test for staleness of information in a search warrant affidavit. State v. Petty, 48 Wash.App. 615, 621, 740 P.2d 879 (1987) (citing State v. Riley, 34 Wash.App. 529, 534, 663 P.2d 145 (1983)). The information is not stale for purposes of probable cause if the facts and circumstances in the affidavit support a commonsense determination that there is continuing and contemporaneous possession of the property intended to be seized. State v. Bohannon, 62 Wash.App. 462, 470, 814 P.2d 694 (1991).
In evaluating whether the facts underlying a search warrant are stale, the court looks at the totality of circumstances. See Bohannon, 62 Wash.App. at 470, 814 P.2d 694. The length of time between issuance and execution of the warrant is only one factor to consider along with other relevant circumstances, including the nature and scope of the suspected criminal activity. See, e.g., Andresen v. Maryland, 427 U.S. 463, 478 n. 9, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (probable cause not stale despite three month delay in warrant's execution because of the nature of documentary evidence and defendant's ongoing criminal activity).
For example, in State v. Hall, 53 Wash.App. 296, 300, 766 P.2d 512 (1989), the court rejected the defendant's argument that the facts supporting the search warrant were stale. Following surveillance of a marijuana grow operation, police arrested Mason, who identified defendant Hall as the supplier of the marijuana plants. It had been two months since Mason had been in Hall's home to purchase marijuana plants. Nevertheless, the court held that probable cause to search existed because it was reasonable to believe that a grow operation was still in existence considering the number of plants found in Mason's possession and Mason's comment about the size of the plants remaining at the house. Hall, 53 Wash.App. at 300, 766 P.2d 512.
This accords with the majority rule followed in other jurisdictions that the determination of whether probable cause is stale depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized. See, e.g., Cordova v. Wyoming, 33 P.3d 142 (Wy.2001).
In this case, Maddox does not complain that probable cause dissipated simply because of the delay in the execution of the warrant. Rather, Maddox asserts that law enforcement's acquisition of information in the interim, which negatively impacted probable cause, rendered the initial probable cause determination stale and thus required a redetermination of probable cause by the magistrate. This court has not previously considered this specific issue.
The Court of Appeals held that the police are required to return to the magistrate for a redetermination of probable cause when information acquired after issuance but before execution would, if believed, negate probable cause. State v. Maddox, 116 Wash.App. 796, *1203 816, 67 P.3d 1135 (2003). The court further held that absent exigent circumstances, the redetermination of probable cause must be made by a neutral and detached magistrate. Maddox, 116 Wash.App. at 817, 67 P.3d 1135. Maddox contends this rule places too much responsibility on the police for deciding when to return to the magistrate for a redetermination of probable cause, thus subverting the constitutional requirement of oversight by a detached and neutral magistrate. We disagree and affirm the well-reasoned opinion of the Court of Appeals.
Maddox proposes that a neutral magistrate must reconsider probable cause when any material evidence is discovered. This goes too far and would require too many unnecessary reviews by a magistrate. There is no reason for police to return to the magistrate unless probable cause is negated. In addition, Maddox's proposed approach fails to provide enforcement officers with guidance in determining what facts are significant enough to demand review by the issuing magistrate. Rather, the test we adopt strikes the proper balance. It ensures that a neutral magistrate redetermines the existence of probable cause when relevant, and as additional information becomes available during the course of the criminal investigation. It requires that the newly discovered information be considered as true for purposes of deciding whether probable cause must be redetermined, thus limiting the police officer's discretion.
Maddox contends that a process which relies on an appellate court's after-the-fact confirmation of probable cause puts law enforcement in the position of making the initial determination of probable cause rather than the magistrate, as required by the Constitution. Maddox also contends that after-the-fact review encourages police to proceed with questionable searches. We disagree. An after-the-fact evaluation of probable cause serves as a crucial safeguard that probable cause existed when the magistrate issued the warrant. See, e.g., Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
The approach we adopt today is similar to the approach adopted in Franks. In Franks, the Court established an after-the-fact review of probable cause for determining the validity of a warrant at the time of its execution. The issue in Franks was whether an intentional or reckless misrepresentation in a search warrant affidavit rendered the warrant invalid. The analysis adopted by the Court was to reevaluate probable cause after striking the misrepresentation from the affidavit. If the affidavit failed to support probable cause without the misrepresentation, the warrant was void and the evidence suppressed. See also State v. Cord, 103 Wash.2d 361, 367, 693 P.2d 81 (1985).
Under this approach, the police proceed at their peril in executing a warrant. The ultimate determination remains with the magistrate or reviewing court. If the reviewing court decides that the newly acquired information negates probable cause, the evidence will be suppressed. The exclusion of evidence is a strong deterrent to unconstitutional and unreasonable searches by law enforcement. State v. Bonds, 98 Wash.2d 1, 12, 653 P.2d 1024 (1982). Therefore, it is unlikely that in close cases law enforcement will opt to proceed with a questionable warrant.
We hold that when law enforcement receives information, which would negate probable cause, the officers must return to the magistrate for reevaluation of probable cause. This approach ensures that probable cause, as determined by an independent magistrate, exists at the time the warrant is executed. In addition, it provides a workable gauge by which police officers enforcing a warrant can determine whether a return to the magistrate is required when new facts arise after issuance of a warrant but before the warrant's execution.

Issue 2. Was there probable cause for the warrant's authorization to search for documents and paraphernalia related to methamphetamine dealing?
Maddox also contends the Court of Appeals erred in holding that redetermination of probable cause was not necessary in this case because the warrant's authorization to search for evidence of methamphetamine dealing was unaffected by Maddox's statement that he currently had no methamphetamine to sell. Maddox argues that the warrant should not have authorized a search for *1204 evidence of methamphetamine dealing because the informant did not claim to have seen methamphetamine (except what he was purchasing) or any drug dealing paraphernalia while in the Maddox residence during the controlled buy. We disagree and affirm the Court of Appeals that there was probable cause to search for evidence of methamphetamine dealing.
The issuing magistrate's determination of probable cause is reviewed for abuse of discretion and is given great deference by the reviewing court. State v. Clark, 143 Wash.2d 731, 748, 24 P.3d 1006 (2001). All doubts are resolved in favor of the warrant's validity. State v. Kalakosky, 121 Wash.2d 525, 531, 852 P.2d 1064 (1993).
Probable cause is established if the affidavit sets forth sufficient facts to lead a reasonable person to conclude there is a probability that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched. State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999). In determining probable cause, the magistrate makes a practical, commonsense decision, taking into account all the circumstances set forth in the affidavit and drawing commonsense inferences. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause requires a probability of criminal activity, not a prima facie showing of criminal activity. Gates, 462 U.S. at 238, 103 S.Ct. 2317; State v. Seagull, 95 Wash.2d 898, 907, 632 P.2d 44 (1981).
The facts of the present case are similar to those of United States v. Rankin, 261 F.3d 735 (8th Cir.2001). In Rankin, the police learned from a confidential informant that the defendant was selling crack cocaine from his residence and that the defendant possessed paraphernalia used in drug trafficking. The police obtained a warrant but did not execute it until nine days later, after learning that the defendant had told the informant that most of the crack cocaine had been moved out of the residence. The defendant argued that this information rendered the probable cause determination stale. The court disagreed, noting that even if the warrant had been stale as to the cocaine, the residence could lawfully be searched under the warrant for paraphernalia. The court concluded that even in light of the additional information, a reasonable person would suspect that items relating to the distribution of crack cocaine would be found at the residence. Rankin, 261 F.3d at 739.
Similarly, in this case, a reasonable person could infer from the facts and circumstances set forth in the affidavit that evidence of methamphetamine dealing remained at Maddox's home even if he was temporarily out of the drug itself. The warrant authorized a search for evidence of methamphetamine dealing as well as methamphetamine itself. The warrant included authorization to search for nonsaleable residue, scales, baggies, customer lists and accounts, and currency. The likelihood that scales, baggies, customer lists, and other evidence of methamphetamine dealing would be found at Maddox's home was not negated by Maddox's statement that he did not have methamphetamine to sell to the informant.
Maddox argues no factual nexus exists here because during the controlled buys the informant did not see scales, baggies, and other paraphernalia inside Maddox's home. However, the magistrate may infer the existence of evidence from the facts and circumstances provided in the affidavit. As we have often stated, the affidavit is not required to establish a prima facie case of guilt, but rather a likelihood that evidence of criminal activity will be found. State v. Patterson, 83 Wash.2d 49, 55, 515 P.2d 496 (1973). Here, there were ample facts in the affidavit from which a magistrate could infer the likely presence of drug dealing paraphernalia.
The affidavit in support of the search warrant indicates the informant had known Maddox for five years and had been purchasing methamphetamine from him for four years. The informant had purchased methamphetamine from Maddox at least 35 times in various quantities, up to four ounces of methamphetamine at a time.
The affidavit details the controlled buy from Maddox at Maddox's home on September 15, 2000, just three days prior to the warrant's issuance. The affidavit also includes Maddox's statement that he might *1205 have more to sell if the informant returned with cash.
In addition, the affidavit contained Detective Parsons' recitation of her training and experience in investigating drug crimes with the task force. The experience and expertise of an officer can be taken into account in determining whether probable cause has been established. State v. Remboldt, 64 Wash.App. 505, 510, 827 P.2d 282 (1992); United States v. Ocampo, 937 F.2d 485 (9th Cir.1991) (magistrate properly considers officer's training and experience in totality of circumstances establishing probable cause). In her affidavit, Detective Parsons stated that she learned from her experience that dealers use baggies and scales in packaging controlled substances for distribution and that they generally maintain records of their drug business. While generalizations regarding common habits of drug dealers, standing alone, cannot establish probable cause, such generalizations may support probable cause where a factual nexus supported by specific facts is also provided and where the generalizations are based on the affiant's experience. Thein, 138 Wash.2d at 148, 977 P.2d 582. In this case, the affidavit recounted the controlled buy, which provided a factual nexus between Maddox's drug dealing and his home, along with specific facts regarding Maddox's long history as a drug dealer. In addition, Parsons' general statements about the types of drug dealing paraphernalia were based on her training and her experience in investigating over 230 drug cases. Therefore, the magistrate issuing the warrant appropriately considered Detective Parsons' statements.
The affidavit also recited Maddox's criminal history, including a felony conviction two years earlier for possession and delivery of a controlled substance. Prior convictions of a suspect may be used in determining probable cause, particularly when a prior conviction is for a crime of the same general nature. Clark, 143 Wash.2d at 749, 24 P.3d 1006; see also State v. Stone, 56 Wash.App. 153, 158, 782 P.2d 1093 (1989). Maddox's criminal history supported the issuing magistrate's determination of probable cause.
Furthermore, the probable cause to search for drug paraphernalia was not affected by Maddox's statement to the informant that Maddox was out of drugs temporarily. On the contrary, the statement that he was temporarily out of drugs, but would soon receive more drugs to sell, reinforced the probability that Maddox was engaged in the ongoing activity of drug dealing. Rather than negating probable cause as to evidence of drug dealing paraphernalia, the statement enhanced the probable cause determination as to those items.
There are ample facts from which the magistrate could infer that paraphernalia used in the sale and distribution of methamphetamine would be found at Maddox's home. Common sense is "the ultimate yardstick" of probable cause. Patterson, 83 Wash.2d at 55, 515 P.2d 496. A commonsense evaluation of the facts in the affidavit indicates that Maddox was involved in ongoing sales of methamphetamine and that evidence of that dealing would probably be found there.
We conclude that the magistrate did not abuse his discretion in issuing the search warrant. There was probable cause to believe that Maddox had methamphetamine and paraphernalia at his house on September 18 when the warrant was issued. We further hold that probable cause as to the paraphernalia and currency authorized by the warrant was not affected by Maddox's statement negating probable cause as to methamphetamine.

CONCLUSION
We affirm the Court of Appeals and hold that probable cause must be redetermined only when information acquired after issuance but before execution would, if believed, negate probable cause. We further hold that redetermination of probable cause was not necessary in this case because Maddox's statement that he was out of methamphetamine did not affect the probable cause supporting the search warrant's authorization concerning paraphernalia and other evidence of drug dealing.
We concur: BRIDGE, CHAMBERS, OWENS and FAIRHURST, JJ.
ALEXANDER, C.J. (dissenting).
Although I agree with the majority that "probable cause must be redetermined only *1206 when information acquired after issuance but before execution would, if believed, negate probable cause,"[1] I dissent because the warrant in this situation was invalid. Applying this test to the facts of this case, the officers of the Clark-Skamania Drug Task Force should have returned to the magistrate in order to search for methamphetamine, as it is undisputed that probable cause for the methamphetamine was negated. Because the officers did not do so, the section of the warrant pertaining to the search for methamphetamine was invalid. The next question becomes whether the sections of the warrant pertaining to drug paraphernalia and evidence of manufacture and sale of methamphetamine, for which probable cause remained, were also invalid. To resolve this, we must determine whether a warrant is valid when probable cause is negated for the primary item, but not other related items listed on the warrant. I would hold that such a warrant is not valid.
When some items described in a search warrant are supported by probable cause, but other items described in the warrant are not, we apply the severability doctrine. See State v. Perrone, 119 Wash.2d 538, 556-60, 834 P.2d 611 (1992) (citing United States v. Fitzgerald, 724 F.2d 633, 637 (8th Cir.1983)). "Under the severability doctrine, `infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant' but does not require suppression of anything seized pursuant to valid parts of the warrant." Id. at 556, 834 P.2d 611 (quoting Fitzgerald, 724 F.2d at 637). However, "`severance is not available when the valid portion of the warrant is "a relatively insignificant part" of an otherwise invalid search.'" Id. at 557, 834 P.2d 611 (quoting In re Grand Jury Subpoenas Dated December 10, 1987, 926 F.2d 847, 858 (9th Cir.1991) (quoting United States v. Spilotro, 800 F.2d 959, 967 (9th Cir.1986))).
Here, methamphetamine was the primary item for which police were searching. The other items listed in the warrant were relatively insignificant compared to the drug. I say that because methamphetamine is the first item listed on the warrant, and it is distinguished from the other words within the warrant with all capital letters. Br. of Appellant, Ex. A at 2. The other items seized in the search of Christopher Maddox's home, such as money and an electronic scale, are all legal to possess, and only become evidence of criminal activity when related to methamphetamine  an item for which probable cause was negated. Indeed, these other items are inextricably intertwined with the methamphetamine. See majority at 14 (stating that "[w]hile generalizations regarding common habits of drug dealers, standing alone, cannot establish probable cause, such generalizations may support probable cause where a factual nexus supported by specific facts is also provided."). In sum, these related items are insignificant compared to the methamphetamine and cannot be severed from the warrant.
I would reverse the Court of Appeals and hold that the warrant issued to search Maddox's home was invalid because probable cause was negated as to the primary item designated in the search warrant: methamphetamine. The search of Maddox's home was therefore unconstitutional. Because the majority holds otherwise, I dissent.
We concur: JOHNSON, SANDERS and MADSEN, JJ.
NOTES
[1] Our analysis is limited to the federal constitution as the parties did not submit any arguments under the state constitution.
[1] Majority at 1205.