# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72863-6-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHAWN CORY GREEN, | ) | |
| | ) | |
| Respondent. | ) | FILED: January 19, 2016 |

TRICKEY, J. — The State appeals the trial court's order suppressing evidence and dismissing a charge of possession with intent to manufacture or deliver a controlled substance, methamphetamine, against Shawn Green. It claims that the trial court erred in concluding that there was not probable cause to issue the search warrant. We disagree and affirm.

## FACTS

On August 1, 2014, the Skagit County District Court issued a search warrant for a residence at 219 Laurel Drive in Sedro-Woolley for violations of the Uniform Controlled Substances Act, chapter 69.50 RCW. The warrant authorized the search and seizure of controlled substances and drug paraphernalia, among other items. The warrant was based on the written affidavit of a sergeant with the city of Sedro-Woolley Police Department. We describe the contents of this affidavit in greater detail later in this opinion.

The police executed the warrant on August 5, 2014. Inside the house were three individuals, including Green, who was in the southwest bedroom. The officers recognized Green from previous law enforcement contacts, and they arrested him. Thereafter, the officers searched the house. They seized several

items from the southwest bedroom, including cell phones, a Washington State Department of Corrections identification card, a "white crystal like substance," digital scales, and packaging materials.[1]

Based on this evidence, the State charged Green with one count of possession with intent to manufacture or deliver a controlled substance— methamphetamine. The charge included a school zone enhancement allegation.

Green moved to suppress the evidence on several bases. He argued that the search warrant affidavit did not establish probable cause to search the residence. He also argued that the search warrant was overbroad and vague. Finally, he argued that several items seized were not supported by probable cause or were not authorized by the warrant.

After a hearing, the trial court concluded that there was not probable cause to believe that there would be drugs in the residence and, therefore, there was not probable cause to issue the search warrant. It entered an order suppressing any evidence located in the residence and dismissing the charge against Green.

The State appeals.

ANALYSIS

The State argues that the trial court erred when it concluded that there was not probable cause to issue the search warrant. We disagree.

"Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the

---

[1] Clerk's Papers (CP) at 39.

defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Thus, probable cause "'requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" Thein, 138 Wn.2d at 140 (quoting State v. Goble, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

We generally review the issuance of a search warrant for abuse of discretion. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 177 (2008). We give great deference to the issuing magistrate's determination of probable cause. State v. Maddox, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004); State v. Chenoweth, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). Our review is limited to the four corners of the affidavit. Neth, 165 Wn.2d at 182. We view the affidavit in a commonsense manner rather than hypertechnically. Chenoweth, 160 Wn.2d at 477. All doubts are resolved in favor of the validity of the warrant. Maddox, 152 Wn.2d at 509. However, "[w]hile we give great deference to the magistrate, that deference is not unlimited." State v. Lyons, 174 Wn.2d 354, 362, 275 P.3d 314 (2012). "We cannot defer to the magistrate where the affidavit does not provide a substantial basis for determining probable cause." Lyons, 174 Wn.2d at 363.

The State devotes most of its appellate briefing to arguments that the trial court erred by applying the wrong standard of review or by failing to give proper deference to the magistrate.[2] At the suppression hearing, the trial court acts in an "appellate-like capacity." Neth, 165 Wn.2d at 182. "Although we defer to the

---

[2] Appellant's Br. at 2-3, 7-8; Appellant's Reply Br. at 2-8.

magistrate's determination, the trial court's assessment of probable cause is a legal conclusion [that] we review de novo." Neth, 165 Wn.2d at 182. Because we review the trial court's conclusion on probable cause de novo, and will give proper deference to the magistrate's determination, we need not address these arguments.

Our task is to determine whether the affidavit contains specific facts to support the magistrate's determination of probable cause. We agree with the trial court that it does not. The affidavit fails to establish a nexus between the items to be seized—drugs and drug paraphernalia—and the place to be searched—219 Laurel Drive.

The affidavit states that since 2007, the Sedro-Woolley Police Department has been receiving complaints of illegal drug activity at 219 Laurel Drive, the residence of Kirk Peters. Police have made arrests at this residence for various offenses, including violations of the Uniform Controlled Substances Act. The affidavit does not provide any details about these complaints or arrests.

The affidavit also describes the activities of a criminal informant (CI). It states that the CI told law enforcement that he or she had purchased methamphetamine from several different people at this residence for the past two years. It also states that the police utilized the CI to make two controlled buys of methamphetamine at this residence in the "latter part of July 2014."[3]

During the first controlled buy, Callie Swartz, one of the residents of 219 Laurel Drive, called several people to have someone deliver methamphetamine

---

[3] CP at 34.

to the residence. While the CI was waiting for this delivery, an individual by the name of Brandon Frizzell arrived and offered to sell the CI methamphetamine. Frizzell pulled a small bag "with [a] crystal like substance" from his sock, weighed it on a portable scale, and packaged it into a smaller Ziploc bag.[4] The CI purchased .8 grams of methamphetamine from Frizzell and left.

During the second controlled buy, five people were present in the living room when the CI arrived. The CI asked if anyone had any "clear"—a street term used to identify methamphetamine—and one person said that he had a little in a glass bowl pipe that he was smoking.[5] No one present had any for the CI to take with him or her. Someone at the residence called Daniel Gilbert and within 15 minutes, Gilbert arrived. Gilbert went into a bedroom with the CI, where he weighed methamphetamine on a portable digital scale and packaged .9 grams into a smaller bag for the CI. The CI paid Gilbert $50 and left.

Thereafter, during the week of July 28, police took the CI to 219 Laurel Drive to conduct a third controlled buy. Six people were inside the house, including Frizzell and Swartz. Frizzell told the CI that he did not have any methamphetamine but that he was going to "re-up" later that night.[6] "Re-up" is a term used by dealers to indicate that they are currently out of drugs but plan to re-stock soon.[7] No one else in the house had any methamphetamine. The CI left. In the same week, "two other attempts to buy methamphetamine from

---

[4] CP at 34.
[5] CP at 35.
[6] CP at 35.
[7] CP at 35.

5

Frizzell and Swartz were unsuccessful because everyone at the house was sold out and were waiting to re-up."[8]

These facts do not establish probable cause to believe that drugs or drug paraphernalia would be found in the residence. During the first two controlled buys, persons outside the house brought controlled substances into the house. Nothing in the affidavit indicates that either of those individuals, who were nonresidents, kept drugs or drug paraphernalia in the house. The third, fourth, and fifth controlled buys were all unsuccessful. No one in the house had any methamphetamine to sell. Nothing in these encounters establishes probable cause to believe that drugs or drug paraphernalia would be found in the residence.

The State points to the CI's statements to law enforcement that he or she had purchased methamphetamine from several individuals at the residence for two years.[9] But the affidavit fails to provide any details about these purchases, such as when the purchases occurred or the identity of the seller. Further, these alleged purchases occurred before the three unsuccessful controlled buys in July 2014. "The facts set forth in the affidavit must support the conclusion that the evidence is probably at the premises to be searched at the time the warrant is issued." Lyons, 174 Wn.2d at 360. The facts presented in this case do not support the conclusion that there would be methamphetamine or drug paraphernalia at the time the warrant was issued.

---

[8] CP at 35.
[9] Appellant's Opening Br. at 10; Appellant's Reply Br. at 9.

The State asserts that "the informant was told by the occupants of the address that they were 'sold out' and they were going to 're-up'" and that "[o]ne occupant advised the informant he would be re-upping that night."[10] The State contends that, from this, the magistrate "could infer that the occupants had been involved in ongoing drug activity and that the drug trafficking and drug use would continue."[11]

The State is incorrect. The affidavit does not establish that occupants of the residence told the CI that they would be re-upping. The affidavit states that Frizzell said that he was going to "re-up."[12] But nothing in the affidavit indicates that Frizzell was an occupant of the house. The affidavit also states that the last two attempts to buy methamphetamine were unsuccessful because "everyone at the house was sold out and were waiting to re-up."[13] But the affidavit never established that occupants of the house were among those individuals.

The State relies on State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). In Maddox, an informant made a controlled buy of methamphetamine from the defendant, Christopher Dorian Maddox, at Maddox's home. 152 Wn.2d at 503. Thereafter, the police obtained a search warrant, which "authorized a search for evidence of methamphetamine dealing as well as methamphetamine itself." 152 Wn.2d at 504, 510. Before police executed the search warrant, the informant attempted another controlled buy. During this attempted buy, Maddox

---

[10] Appellant's Opening Br. at 10-11.
[11] Appellant's Opening Br. at 11.
[12] CP at 35.
[13] CP at 35.

told the informant that he "'was out [of methamphetamine] and that he would have some in a couple of days.'" 152 Wn.2d at 504.

On appeal, the Supreme Court acknowledged that probable cause to search for methamphetamine was negated by Maddox's statements. Nonetheless, it concluded that there was probable cause to search for evidence of methamphetamine dealing. Maddox, 152 Wn.2d at 510. The court reasoned that a reasonable person could infer from the facts and circumstances that evidence of methamphetamine dealing remained at Maddox's home even if he was temporarily out of the drug itself. It relied on the facts that the informant had known Maddox for five years, had purchased methamphetamine from him for four years, had purchased methamphetamine from Maddox at least 35 times in various quantities up to four ounces, and had purchased methamphetamine from Maddox at his home just three days prior to the warrant's issuance. 152 Wn.2d at 511. It also relied on a detective's testimony about the common habits of drug dealers and on Maddox's long history as a drug dealer. 152 Wn.2d at 511-12.

This case does not present similar facts. Here, the affidavit does not indicate that the informant ever purchased drugs from anyone who lived at 219 Laurel Drive. Nor does it establish that the occupants of the house have a long history as drug dealers. Thus, the affidavit in this case is unlike the affidavit in Maddox, which "provided a factual nexus between Maddox's drug dealing and his home." 152 Wn.2d at 511-12.

Because the affidavit fails to establish a nexus between the item to be seized and the place to be searched, probable cause did not exist to issue the search warrant. The trial court properly granted the motion to suppress.

Given our resolution of this issue, we need not address Green's argument that the trial court should be affirmed on the alternative ground that the warrant was overbroad and lacked particularity.[14]

Affirmed.

Trickey, J

WE CONCUR:

_____     _____

---

[14] See Br. of Resp't at 13-16.