# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49421-3-II |
| Respondent, | |
| v. | |
| GUSTAVO ANDREW ALLEN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A jury found Gustavo Andrew Allen guilty on two charges of felony drug possession. Because probable cause supported the search warrant to search his home, and because the trial court did not abuse its discretion by requiring him to register as a felony firearm offender, we affirm the convictions and this condition. However, because Allen's sentence exceeded the statutory maximum, we remand for resentencing.

## FACTS

In 2015, a confidential informant (CI) told Washington State Patrol Trooper Phillip Thoma about a middle-aged Hispanic male selling heroin in the Battle Ground and Ridgefield areas. Based on the CI's information, Thoma tentatively identified the alleged heroin seller. His name was Jorge Cruz-Pegueros. With the assistance of the CI, Thoma soon confirmed Cruz-Pegueros's involvement in drug activities.

Thoma set up surveillance on a home in Battle Ground where Cruz-Pegueros and Allen both lived. Among other details, the police learned that Cruz-Pegueros drove a blue Ford Econovan and a silver Honda Accord, both of which the police saw on numerous occasions at the Battle Ground home.

Thoma then set up three controlled heroin buys between the CI and Cruz-Pegueros. For the first buy, Cruz-Pegueros drove the Econovan. Although the police did not surveille Cruz-Pegueros en route to the buy, surveillance placed the van at his Battle Ground residence ten minutes before the buy. Police followed Cruz-Pegueros from the buy to a residence in Ridgefield, then directly to the Battle Ground house. For the second and third buys, Cruz-Pegueros drove the Accord. The police followed Cruz-Pegueros from the buy site to the same Ridgefield residence, but lost contact thereafter.

Thoma applied to the superior court for a search warrant for the Battle Ground and Ridgefield properties. Thoma supported the warrant application with an affidavit that detailed the facts above and other information. The superior court signed the warrant and authorized the police to search both properties.

The police executed the warrant on the Battle Ground property. They discovered a pound of methamphetamine hidden in the attic. The police also found a safe containing $1,600 in cash and drug paraphernalia, including plastic baggies, a digital scale, and a grinder containing heroin residue. Allen, present at the time of the search, admitted to knowledge of the drugs and to helping Cruz-Pegueros with drug pick up, delivery, and processing. The police also recovered two firearms from Cruz-Pegueros's bedroom.

The State charged Allen with two counts of possession of a controlled substance with intent to deliver, one each for methamphetamine and heroin. The methamphetamine charge included a school bus route stop enhancement and a firearm enhancement.

Pretrial, Allen moved to suppress the controlled substances, the firearms, and his statements to police. He argued that the search warrant failed to establish a sufficient nexus between drug trafficking and the Battle Ground address. The trial court denied Allen's motion and entered written findings and conclusions.

The matter proceeded to trial, and the court instructed the jury on accomplice liability and firearm enhancements. The jury found Allen guilty on both drug charges, and both enhancements.

The court imposed a standard range sentence of 51 months on the first count and added 24 months for the school bus route stop enhancement and 36 months for the firearm enhancement. In total, Allen received a 111 month sentence for the first count. On Allen's second count, the court imposed a six month concurrent sentence. The court also imposed 12 months of community custody to run concurrently on both counts, bringing Allen's total sentence to 123 months. The court also required Allen to register as a felony firearm offender. Allen appeals.

ANALYSIS

Allen argues that the police did not have probable cause to search his Battle Ground home and that the physical evidence seized from the residence and his statements should have been suppressed. He asserts the search warrant affidavit did not establish a nexus between his home and criminal activity. We disagree.

I.     LEGAL PRINCIPLES

We review a magistrate's issuance of a search warrant for abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). Because we consider only the information available to the issuing magistrate at the time of the probable cause determination, our review is limited to the four corners of the search warrant affidavit. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008); *State v. Olson*, 73 Wn. App. 348, 354-55, 869 P.2d 110 (1994); *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988). Warrants are to be read in a commonsense and practical fashion, drawing "commonsense inferences" from all the circumstances set forth in the affidavit. *Maddox*, 152 Wn.2d at 509.

When a party challenges probable cause and seeks to suppress evidence from a warranted search at trial, "the trial court necessarily acts in an appellate-like capacity" to review the magistrate's determination of probable cause. *Neth*, 165 Wn.2d at 182. In this context, "the trial court's assessment of probable cause is a legal conclusion we review de novo." *Neth*, 165 Wn.2d at 182. However, we do not lose sight of the underlying deference due to the issuing magistrate's probable cause determination. *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012); *Perrone*, 119 Wn.2d at 560. Accordingly, we resolve all doubts in favor of the warrant's validity. *State v. Kalakosky*, 121 Wn.2d 525, 531, 852 P.2d 1064 (1993).

II.     PROBABLE CAUSE

A search warrant is invalid unless supported by probable cause. U.S. CONST., Amend. IV; WASH. CONST., art. 1, § 7. To establish probable cause, the supporting affidavit should describe such "objective facts and circumstances" that "would lead a neutral and detached person to conclude that more probably than not, evidence of a crime will be found" in the place to be searched. *In re Det. of Petersen*, 145 Wn.2d 789, 797, 42 P.3d 952 (2002). An affidavit "must be

based on more than mere suspicion or personal belief that evidence of a crime will be found." *Neth*, 165 Wn.2d. at 183. Although affidavits may include generalized statements about common criminal habits known to the police, generic statements alone cannot establish probable cause. *State v. Thein*, 138 Wn.2d 133, 146-48, 977 P.2d 582 (1999).

Probable cause for a search also requires "a nexus between criminal activity and the item to be seized and between that item and the place to be searched." *Neth*, 165 Wn.2d at 183. The judge issuing the warrant "is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *Maddox*, 152 Wn.2d at 505. Courts should use a common sense approach in evaluating whether a warrant affidavit demonstrates that there is a probability criminal activity has occurred at the place to be searched. *Maddox*, 152 Wn.2d at 509. Warrants are to be read in a commonsense and practical fashion, drawing "commonsense inferences" from "all the circumstances set forth in the affidavit." *Maddox*, 152 Wn.2d at 509. However, if an improper search does occur, "all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999).

In this case, the search warrant affidavit stated that police surveillance of Cruz-Pegueros began after a CI identified him as a potential heroin dealer. Surveillance of the Battle Ground home Cruz-Pegueros and Allen shared established that both vehicles Cruz-Pegueros used during the controlled buys were regularly parked at that address. Cruz-Pegueros arrived at the first buy driving the Econovan, which had been parked in front of the Battle Ground home ten minutes earlier. After the buy, Cruz-Pegueros returned to the Battle Ground house after making one stop in Ridgefield. Cruz-Pegueros used the Accord, for the second and third buys. Based on this evidence, the superior court authorized the search warrant.

We conclude that probable cause existed to search the Battle Ground home. The police conducted three controlled buys that confirmed the CI's information that Cruz-Pegueros sold heroin. While the known drug behavior did not occur at the Battle Ground home, the mere fact that Cruz-Pegueros lived there would be insufficient to establish probable cause. *Thein*, 138 Wn.2d at 147-48. However, the search warrant affidavit provided additional evidence demonstrating the "nexus" between heroin and the Battle Ground house.

A nexus establishing probable cause between the place to be searched and criminal activities exists where the facts show the seller left from a residence, consummated the sale, and returned to the residence. *State v. G.M.V.*, 135 Wn. App. 366, 372, 144 P.3d 358 (2006). *G.M.V.* is factually similar to the case at bar. There, the search warrant affidavit for a home described police surveillance of a suspect who left his girlfriend's house, conducted a controlled drug buy at another location, and then returned to the house. 135 Wn. App. at 369. The court determined that a sufficient nexus existed between the residence and the drug activity and that probable cause existed to search the girlfriend's house based on the suspect's travel to the drug buy from the house and back again. *G.M.V.*, 135 Wn. App. at 372.

In our case, before the first controlled buy, the Econovan was at the Battle Ground home. Cruz-Pegueros drove the van and it arrived at the buy site ten minutes later with heroin for sale. He drove to Ridgefield and then back to the Battle Ground residence. Given this short time frame it is reasonable to infer that Cruz-Pegueros drove his Econovan directly from the Battle Ground house to the buy and that a nexus existed between the home and the sale. It established probable

cause to believe a nexus existed between the criminal activity and the Battle Ground home. Under *G.M.V.*, the warrant affidavit in this case was sufficient to establish probable cause for the search of the Battle Ground home.[1]

Allen seems to assert that the only evidence connecting Cruz-Pegueros and the Battle Ground house is the police observation of him returning there after the first controlled buy. Allen misinterprets the record. Other evidence exists.

Allen relies on *Thein*, where the police searched Thein's home and discovered a marijuana grow. They uncovered evidence at a marijuana dealer's residence showing drug activity, money orders made out to Thein for "rent," a box of nails addressed to Thein, and oil filters that fit a vehicle Thein owned. 138 Wn.2d at 137-38. Neighbors told police that Thein was the dealer's landlord and drug supplier. 138 Wn.2d at 137-38.

The police sought a warrant to search Thein's home, asserting in an affidavit that they believed Thein to be involved in a marijuana grow operation and that the items found in the dealer's residence connected Thein's home to known drug activity. The affidavit also contained generalized statements of belief regarding the common habits of drug dealers. *Thein*, 138 Wn.2d at 138-39.

*Thein* held that the search warrant affidavit failed to establish a nexus between the drugs found at the tenant's residence and Thein's personal residence. 138 Wn.2d at 142-47, 151. It

---

[1] Allen also assigns error to the trial court's decision to uphold the warrant. Allen correctly points out that the trial court appears to misread the warrant affidavit. The trial court stated that the police followed Cruz-Pegueros from the controlled buys to the Battle Ground house three times. In fact, the police directly observed Cruz-Pegueros returning to the house only once. The State acknowledged the mistake, arguing it is not dispositive. On this record, the State is correct. As discussed above, an accurate reading of the warrant affidavit reveals sufficient evidence to demonstrate a nexus between the drug activity and location to be searched. Because the evidence supports a determination of probable cause, the trial court's error was harmless.

recognized that a person's involvement in drug dealing at one location does not provide probable cause to connect that activity to a person's residence, even in conjunction with an officer's generalized statements about the behavior of drug dealers. 138 Wn.2d at 146-48. Further, the box of nails and oil filters, the only evidence linked to Thein's residence, were "innocuous." 138 Wn.2d at 137-38, 150.

Allen argues that here, as in *Thein*, the search warrant affidavit failed to establish a connection between drug activity and the Battle Ground home. He asserts that neither the boilerplate assertions regarding typical behaviors of drug dealers nor the evidence gathered by police while conducting surveillance on Cruz-Pegueros established a sufficient nexus. However, this case and *Thein* are distinguishable.

As relevant here, the affidavit in *Thein* was inadequate because, beyond generic statements, the police could only point to "innocuous" evidence linking Thein's own residence to the residence where drugs had been found. 138 Wn.2d at 137-38, 150. Here, as stated above, the police have far more than the officers had in *Thein*. It is reasonable to infer that Cruz-Pegueros drove the van from the Battle Ground house directly to the buy location. After the buy, Cruz-Pegueros made a single stop in Ridgefield, then returned to the Battle Ground property. The evidence that Cruz-Pegueros travelled from the Battle Ground house to his confirmed drug activity, and returned there afterwards, is sufficient to connect that property to the crime for purposes of establishing probable cause.[2]

---

[2] Allen also cites to *State v. Blye*, No. 46950-2-II, (Wash. Ct. App. Oct. 25, 2016) (unpublished), http://www.courts.wa.gov/opinions/, an unpublished opinion, as persuasive authority. We do not believe this case is persuasive on the issue before us. It is distinguishable on the facts.

III.   THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REQUIRING ALLEN TO REGISTER AS A FELONY FIREARM OFFENDER

Arguing in the alternative, Allen asserts that the trial court abused its discretion by requiring Allen to register as a felony firearm offender under RCW 9.41.333.  Allen argues that registration under RCW 9.41.333 requires a jury finding that he was personally armed with a firearm during the commission of his crime.  The State argues that because the jury found that Allen was "armed" for purposes of the firearms enhancement, the trial court did not abuse its discretion by requiring Allen to register as a felony firearm offender.  The State is correct.

RCW 9.41.330 requires trial courts to decide whether to require a defendant convicted of a felony firearm offense to register under RCW 9.41.333.  Under RCW 9.41.010(9)(a), (e), "felony firearm offense" is defined as "[a]ny felony offense that is a violation of this chapter . . . .  [and a]ny felony offense if the offender was armed with a firearm in the commission of the offense."

Because the decision to require registration is discretionary, RCW 9.41.330, we review a trial court's decision to require a convicted defendant to register as a felony firearm offender for abuse of discretion.  *State v. Miller*, 159 Wn. App. 911, 918, 247 P.3d 457 (2011).  "A court abuses its discretion when an order is 'manifestly unreasonable or based on untenable grounds.'"  *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)).  An order is manifestly unreasonable or based on untenable grounds if it results from applying the wrong legal standard or is unsupported by the record.  *Rafay*, 167 Wn.2d at 655.

In deciding whether to require registration, courts consider the following non-exclusive factors:  the defendant's criminal history, whether he has been previously found not guilty of an offense by reason of insanity, and evidence of the defendant's propensity for violence.  RCW

9.41.330(2). Here, the trial court considered these three factors, as well as the "facts of [the] current case." Clerk's Papers (CP) at 81.

On this record, the court did not abuse its discretion by requiring Allen to register as a felony firearm offender. First, Allen was convicted of a felony. Second, in a special verdict form for the firearm enhancement, the jury found that Allen was "armed with a firearm at the time of the commission of the crime." CP at 47. As the relevant jury instruction stated, a person is considered armed if "the firearm is easily accessible and readily available." CP at 71 (Instr. 19). The same instruction clearly explained that "[i]f one participant in a crime is armed with a firearm, all accomplices to that participant are deemed so armed, even if only one firearm is involved." CP at 71 (Instr. 19).

Allen offers no support for his argument that a judge abuses his discretion by requiring an accomplice to register as a felony firearm offender. The court did not abuse its discretion.

IV.     ALLEN'S SENTENCE EXCEEDED THE STATUTORY MAXIMUM OF 120 MONTHS

Allen also argues that, after factoring in community custody, his total sentence of 123 months exceeds the 10 year statutory maximum for possession of methamphetamine with intent to distribute. RCW 69.50.401(2)(b). Allen is correct. With respect to Allen's methamphetamine conviction, the sentencing court imposed a standard range sentence of 51 months, to which it added 24 months for the bus stop enhancement and 36 months for the firearm enhancement. The court also imposed 12 months of community custody, bringing Allen's total sentence for this count to 123 months. The State acknowledges Allen's sentence exceeds the statutory maximum by three months, and recommends resentencing.

We agree with the State and affirm Allen's convictions, the felony firearm registration requirement but remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Lee, J.