# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHIN FU CHEN and MY TIEU LAO,<br><br>               Petitioners,<br><br>    v.<br><br>CHUCK E. ATKINS, Sheriff of Clark County, CLARK COUNTY SHERIFF'S OFFICE, and CLARK COUNTY, WASHINGTON,<br><br>               Respondents.<br><br>In the Matter of the Forfeiture of Personal Property to wit:<br><br>Bank of America Account #7024: $5,963.47<br>Bank of America Account #1451: $75,429.42<br>Bank of America Account #8810: $7,685.18 | No. 57002-5-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – Chin Fu Chen and My Tieu Lao appeal the superior court's order affirming the district court's forfeiture order regarding funds from their bank accounts that the Clark County Sheriff's Office (CCSO) seized as proceeds from an illegal cannabis grow operation. The seizure occurred pursuant to a search and seizure warrant for Chen and Lao's bank accounts that was issued 11 months after law enforcement shut down Chen and Lao's grow operation.

Chen and Lao argue that probable cause did not support the search and seizure warrant because the information in the affidavit supporting the warrant was stale. We hold that the

superior court did not err by concluding that the information in the affidavit was not stale.

Accordingly, we affirm the superior court's order affirming the district court's forfeiture order.[1]

FACTS

*Background*

In January 2020, law enforcement executed a search warrant at Chen and Lao's residence[2] and uncovered a sophisticated cannabis production operation. Law enforcement seized 115 cannabis plants, 31 pounds of processed cannabis, $6,300 in cash, equipment involved in growing, processing, and packaging cannabis, and financial documents. Nothing in the record suggests that the cannabis operation continued after January 2020.

In December 2020, John Luciano – a financial investigator for the CCSO – submitted an affidavit supporting a warrant for the seizure of Chen and Lao's bank accounts. Luciano obtained financial records from Chen and Lao's bank to distinguish between legitimate income and illegal proceeds and to establish the disposition of illegal funds.

Luciano's affidavit alleged that his investigation had determined that approximately $60,000 of unreported income was deposited into Chen and Lao's bank accounts each year from 2016 to 2019 for a total of approximately $225,000 of unreported income. During this same period, Chen and Lao both received legitimate income reported on W-2 forms that was deposited into the bank accounts and commingled with the unreported income.

In addition, Luciano alleged that account records showed that Chen and Lao's personal living expenses exceeded their W-2 reported income by approximately $72,000. And their cash

---

[1] Chen and Lao also request an award of attorney fees pursuant to RCW 69.50.505(6). Because they are not the prevailing party, they are not entitled to an award of attorney fees.

[2] Chen and Lao are a married couple.

on hand and asset acquisitions increased by approximately $154,000. The affidavit stated that Chen and Lao admitted that they had no other sources of legitimate income other than their W-2 income and they received no cash gifts. Luciano opined that any balance remaining in the bank accounts would be illegal proceeds.

A superior court judge issued a warrant to search and seize proceeds from violations of the controlled substances and money laundering statutes from three of Chen and Lao's bank accounts. The judge issued the warrant based on a review of Luciano's affidavit.

Pursuant to the warrant, the CCSO seized amounts in three of Chen and Lao's bank accounts totaling $89,078.07. The CCSO sent Chen and Lao a Notice of Seizure and Intended Forfeiture regarding the seized funds. Chen and Lao contested the forfeiture and removed the proceeding to district court.

*District Court Proceedings*

In district court, Chen and Lao moved for summary judgment, arguing among other things that the bank account funds could not properly be forfeited to the CCSO because the information supporting the search and seizure warrant was stale. The district court reviewed the December 2020 affidavit and concluded that the information supporting the warrant was not stale. Accordingly, the court denied the motion.

The CCSO subsequently relinquished any claim to $30,242 of the seized funds, which represented the increase in account balances between January and December 2020. After an evidentiary hearing, the district court ordered that the remaining $58,835 would be forfeited.

*Superior Court Proceedings*

Chen and Lao appealed to the superior court, arguing among other things that the district court erred by concluding that the information supporting the search and seizure warrant was not

3

stale. The superior court reviewed the December 2020 affidavit and concluded that the information was not stale because the warrant affidavit clearly established a continuing and contemporaneous possession of illegal proceeds from the cannabis operation. Accordingly, the superior court affirmed the district court's forfeiture order.

Chen and Lao sought discretionary review in this court of the superior court's affirmance of the district court's forfeiture order, raising several issues. A commissioner of this court granted discretionary review regarding the staleness issue only.

ANALYSIS

A.    LEGAL PRINCIPLES

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution require probable cause to support the issuance of a search warrant. *See State v. Gudgell*, 20 Wn. App. 2d 162, 174, 499 P.3d 229 (2021) (Fourth Amendment); *State v. Ollivier,* 178 Wn.2d 813, 846, 312 P.3d 1 (2013) (article 1, section 7). "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.' " *Gudgell*, 20 Wn. App. 2d at 174 (quoting *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999)).

A search warrant that has become stale at the time of its issuance or execution is invalid. *See State v. Friedrich*, 4 Wn. App. 2d 945, 955, 425 P.3d 518 (2018). Whether information in a search warrant affidavit is stale depends on the circumstances of each case. *State v. Lyons*, 174 Wn.2d 354, 361-62, 275 P.3d 314 (2012). Some length of time naturally passes between observations of suspected criminal activity and the presentation of an affidavit to an issuing magistrate or judge. *Id.* at 360. But when the passage of time is so prolonged that it is no longer

probable that a search will uncover evidence of criminal activity, the information underlying the affidavit is deemed stale. *Id.* at 360-61.

The test for staleness is based on common sense and requires consideration of the totality of the circumstances. *State v. Maddox*, 152 Wn.2d 499, 506, 98 P.3d 1199 (2004). "[I]nformation is not stale for purposes of probable cause if the facts and circumstances in the affidavit support a commonsense determination that there is continuing and contemporaneous possession of the property intended to be seized." *Id.* The passage of time is only one factor to be considered along with other relevant circumstances. *Id.* Other factors for assessing staleness include the nature and scope of the alleged criminal activity, the length of the activity, and the type of property to be seized. *Id.*

We review a trial court's assessment of probable cause de novo, giving deference to the magistrate's determination. *State v. Denham*, 197 Wn.2d 759, 767, 489 P.3d 1138 (2021). We consider only the information contained in the affidavit supporting probable cause. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). We resolve all doubts in favor of the warrant's validity. *Maddox*, 152 Wn.2d at 509.

B.  STALENESS ANALYSIS

Chen and Lao argue that the superior court and district court erred in concluding that the information in the affidavit supporting the search and seizure warrant regarding their bank accounts was not stale. We disagree.

The issue here is whether the facts stated in the warrant affidavit supported the determination that some of the proceeds Chen and Lao accumulated from their illegal activities between 2016 and January 2020 remained in their bank accounts in December 2020. *See Maddox*, 152 Wn.2d at 506. We conclude that the common sense inference from the information

5

in the December 2020 affidavit is that illegal proceeds remained in the bank accounts at the time of the search and seizure.

First, Luciano's affidavit supports the common sense conclusion that proceeds from illegal activities were in Chen and Lao's bank accounts in January 2020. Luciano stated that from 2016 through 2019, Chen and Lao had $225,000 in unreported income, spent $72,000 more than their legitimate income on living expenses, and had $154,000 in increased cash on hand and asset acquisitions. Although Luciano did not specify the amount of increased cash on hand, he clearly concluded that there was some amount of cash on hand in the bank accounts that related to illegal activities.

Chen and Lao repeatedly claim that Luciano's affidavit established that any illegal proceeds already had been spent by the end of 2019. But the affidavit language does not support this claim – Luciano did not state that Chen and Lao had spent all the illegal proceeds. In fact, he opined in the affidavit that "[a]ny bank balance represents illegal proceeds." Clerk's Papers at 42.

Second, Luciano's affidavit supports the common sense conclusion that at least some proceeds from illegal activities remained in Chen and Lao's bank accounts in December 2020. The parties debate whether Chen and Lao would have used the illegal proceeds or the legitimate income in the bank accounts to pay expenses during 2020. But this issue is immaterial because it is undisputed that Chen and Lao commingled the illegal proceeds and the legitimate income. As noted in *Maddox*, the type of property to be seized is an important factor regarding staleness. 152 Wn.2d at 506. Once money is commingled in a bank account, it is impossible to determine the source of any particular amount. Because there was no practical distinction between Chen and Lao's legitimate income and their illegal proceeds once they were commingled, the common

sense inference is that the money was spent on a pro rata basis.  Therefore, unless the account balances went to zero at some point after January 2020, some of the illegal proceeds necessarily remained in those accounts.

We conclude that the information in the warrant affidavit supported a common sense determination that Chen and Lao had "continuing and contemporaneous possession" of at least some illegal proceeds in their bank accounts in December 2020.  *See Maddox*, 152 Wn.2d at 506.  Therefore, we hold that the district court and the superior court did not err in concluding that the information supporting the December 2020 search and seizure warrant was not stale.

CONCLUSION

We affirm the superior court's order affirming the district court's forfeiture order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
CRUSER, A.C.J.


_____
PRICE, J.